363 So.2d 445 (1978)
STATE of Louisiana
v.
Herman WILSON.
No. 61774.
Supreme Court of Louisiana.
October 9, 1978.
*446 William J. O'Hara, Supervising Atty., New Orleans, William Cunningham, Student Practitioner, for defendant-appellant.
William J. Guste, Jr., Atty. Gen., Barbara Rutledge, Asst. Atty. Gen., Harry F. Connick, Dist. Atty., Louise S. Korns, Asst. Dist. Atty., for plaintiff-appellee.
SANDERS, Chief Justice.
Defendant Herman Wilson was charged by bill of information with armed robbery, a violation of LSA-R.S. 14:64. On February 5, 1976, he was tried before a twelve person jury which found him guilty as charged. Thereafter, defendant was sentenced as a fourth offender to imprisonment for 110 years.
In his single assignment of error, the defendant alleges that the trial judge erred in overruling his motion to suppress the tangible evidence.
At about 1:30 a. m. on July 14, 1975, a hitchhiker on Canal Street was picked up by two men who robbed him at gunpoint of a watch and ring, then released him. Shortly after the crime, Larry Carter was arrested and identified by the victim. Protesting his innocence, Carter claimed that he had been at Patricia Watson's residence at the time of the crime. Officer Larry Lombas and two other police officers proceeded to Patricia Watson's house to check on Carter's alibi. Ms. Watson answered their knock, and when told of Carter's arrest, she reportedly exclaimed that "she knew they would get in trouble." Asked to elaborate, she stated that Larry Carter and defendant Wilson (her boyfriend, with whom she resided) had been at her residence until about 11:00 p. m. on July 14, had left together, had returned at about 2:00 a. m. on July 15, but had left again. While Ms. Watson was talking to the officers, Wilson telephoned and told her that he would be home shortly. She informed the police and invited them to wait. At 6:40 a. m., defendant returned home, saw the police as he entered the front door, and ran. The officers pursued and arrested him, and in a search incident to that arrest, seized the stolen watch and ring which defendant was wearing.
The defendant offered a different version of the facts. Ms. Watson stated that five police officers came to her home, entered without asking her permission, and questioned her about both Larry Carter and defendant Wilson. When defendant called, she said, one of the officers picked up an extension telephone and another presented her with a note instructing her to ask defendant where he was. Ms. Watson also stated that the watch and ring had been seized from the apartment rather than from defendant's person. The trial court apparently rejected the defense testimony.
Defendant argues in brief that the officers' entry into Ms. Watson's residence was illegal and that his subsequent arrest was tainted by that illegality. He complains of the method by which the police obtained their information, not of the ultimate sufficiency of their grounds to arrest. The State maintains Ms. Watson consented to their entry into the residence and cooperated in their action.
Under accepted constitutional principles, a valid consent to search allows police to dispense with a search warrant. Schneckloth v. Bustamonte, 412 U.S. 218, 93 S.Ct. 2041, 36 L.Ed.2d 854 (1973); State v. Mitchell, 360 So.2d 189 (La.1978); State v. Abram, 353 So.2d 1019 (La.1977). Therefore, if Patricia Watson invited the police into her residence, voluntarily answered their questions, permitted them to eavesdrop on her conversation with defendant, and consented for them to remain inside waiting for defendant, the information leading to defendant's arrest was legally secured.
Whether consent is voluntary is a question of fact. The determination of the trial court, which has an opportunity to hear and observe the witnesses, is entitled to great weight on appeal. See, State v. Dunbar, 356 So.2d 956 (La.1978); State v. Temple, 343 So.2d 1024 (La.1977). Here, the testimony of Officer Larry Lombas provided ample basis for a conclusion that Ms. Watson voluntarily gave her consent.
*447 Without a formal assignment of error, the defendant makes a specific complaint regarding the propriety of the sentence. We do not reach this complaint because we have noted a patent error in the sentence which requires correction. See LSA-C. Cr.P. Art. 920(2).
A defendant sentenced as a fourth offender under the provisions of LSA-R.S. 15:529.1 A(3) is subject to imprisonment "for a determinate term not less than the longest term prescribed for a first conviction and not more than his natural life and in no case less than twenty years." In State v. Delaney, 359 So.2d 976 (La.1978), we concluded that a sentence of imprisonment for ninety-nine years, which could be imposed upon a first conviction of armed robbery, did not violate the Habitual Offender Law's prohibition that the sentence be "not more than his natural life." Consequently, a sentence of 99-years' imprisonment, the longest term prescribed for armed robbery by LSA-R.S. 14:64, is the appropriate sentence here. State v. Delaney, supra That sentence is without benefit of parole, probation, or suspension of sentence.
Defendant's sentence of 110-years' imprisonment is illegal and must be set aside.
Accordingly, defendant's conviction is affirmed, but the sentence is vacated and the case is remanded for resentencing in accordance with law.
CALOGERO, J., concurs and assigns reasons.
DENNIS, J., concurs for reasons by CALOGERO, J.
CALOGERO, Justice, concurring.
I agree that the defendant's conviction should be affirmed. However, the majority's resolution of the argued assignment of error prompts me simply to concur in this opinion.
Under the mandate in R.S. 15:529.1 A(3), this defendant must be sentenced to a term "not less than the longest term prescribed for a first conviction" (in this case ninety-nine years) but for a term "not more than natural life." The majority relies on State v. Delaney, 359 So.2d 976 (La.1978) which in approving defendant's sentence held that a sentence of imprisonment for ninety-nine years did not violate the prohibition that a fourth offender must be sentenced for "not more than his natural life." However, in State v. Alexander, 362 So.2d 775 (La.1978), this Court held that a sentence of one hundred years at hard labor exceeded the life expectancy of the defendant and therefore could not be imposed on a fourth offender. It seems that if a sentence of one hundred years exceeds the life expectancy of a defendant, then a sentence of ninety-nine years must do so also. To resolve the apparent conflict in the law, this Court should re-examine the holding in Alexander that a one hundred year sentence exceeds the natural life of the defendant, or the holding in Delaney that a defendant convicted for armed robbery may be sentenced under the habitual offender statute to ninety-nine years. We should either reverse Alexander or find that the sentencing provisions of habitual offender statute do not apply to multiple convictions for armed robbery. We cannot logically reconcile the two cases.