386 So.2d 1374 (1980)
STATE of Louisiana
v.
Willie ROBINSON.
No. 66352.
Supreme Court of Louisiana.
June 23, 1980.
Rehearing Denied September 12, 1980.
*1375 William J. Guste, Jr., Atty. Gen., Barbara Rutledge, Asst. Atty. Gen., John M. Mamoulides, Dist. Atty., Abbott J. Reeves, Robert A. Pitre, Jr., Asst. Dist. Attys., for plaintiff-appellee.
Gerdes, Valteau & Cade, Charles T. Williams, Arthur L. Harris, Sr., New Orleans, for defendant-appellant.
BLANCHE, Justice.[*]
Defendant, Willie Robinson, was convicted of aggravated rape in violation of La. R.S. 14:42. Subsequently, he was sentenced to life imprisonment at hard labor without benefit of parole, probation or suspension of sentence. Defendant now appeals on the basis of four assignments of error.
On the evening of October 9, 1978, the rape victim went to the Courthouse in New Orleans in order to meet a friend who was attending a driver's education class. After arriving at the Courthouse, she learned that the class had been moved to West Jefferson High School, so she went there to look for her friend. She was walking on the school grounds toward a lighted building, when a man pushed her to the ground and began beating her with his fists. She fought with her assailant for some time until finally, he threatened to kill her and then raped her. Immediately following the rape, she went to the police and reported the incident.
On two separate occasions, the victim identified defendant as her attacker, and as a result, police went to defendant's residence to investigate. They searched the house, seized a shirt, a pair of pants and a pair of shoes, and took defendant into custody. The victim identified the shoes as being similar to the ones worn by her attacker. She said the pants seized were not the ones he wore, and she could not be sure of the shirt. Subsequently, defendant was charged with aggravated rape.

Assignment of Error Number 1
Defense counsel contends the trial court erred in denying his motion to suppress the introduction of the clothes in evidence because they were seized as a result of an illegal search.
At a hearing on the motion to suppress, the police officers who seized the evidence and the defendant gave sharply differing accounts of the search. Detectives Robert Masson and Susan Miller testified that they, along with two other officers, knocked on defendant's door and identified themselves as police. After explaining to defendant that someone had identified him as the perpetrator of a rape, Masson asked defendant if the officers could search the residence. The detectives stated that defendant consented to the search and signed a consent to search form which had been filled out by Detective Susan Miller. Only after defendant signed the form did the officers search the house and seize the clothes.
Both defendant and defendant's wife testified that the officers did not identify themselves as police, did not ask defendant if they could search and did not have defendant sign a consent to search form. They claim that after they answered a *1376 knock on the door, the police walked into their residence and immediately began to search every room. Both defendant and his wife admitted the signature on the consent to search form was similar to defendant's signature, but defendant claimed that if he signed it, he did so at the police station later that night.
Both the Louisiana and the United States Constitutions prohibit unreasonable searches and seizures. La.Const. art. 1, § 5; U.S.Const. amend. 4. A search conducted without a warrant is, per se, unreasonable subject only to a few well-delineated exceptions. Schneckloth v. Bustamonte, 412 U.S. 218, 219, 93 S.Ct. 2041, 2043, 36 L.Ed.2d 854 (1973). A valid consent search is one of these exceptions. Schneckloth v. Bustamonte, supra; State v. Wilson, 363 So.2d 445 (La.1978); State v. Mitchell, 360 So.2d 189 (La.1978). After the defendant establishes that a search was made without a warrant, the burden of proof shifts to the state to establish that the consent was freely and voluntarily given. State v. Johnson, 380 So.2d 32 (La.1980); State v. Dunbar, 356 So.2d 956 (La.1978). Whether consent to a search was voluntary is a question of fact to be determined by an analysis of all the circumstances of each case. State v. Wilson, supra; State v. Schouest, 351 So.2d 462 (La.1977). Because consent is a question of fact involving the credibility of witnesses, the determination of the trial judge, who had an opportunity to observe and hear the witnesses, is given great weight on review. State v. Dunbar, supra; State v. Schouest, supra; State v. Temple, 343 So.2d 1024 (La.1977).
In the instant case, a straightforward credibility issue was presented to the trial judge. The police officers testified that defendant voluntarily signed a consent to search form after Officer Masson asked him for permission to search the house. In contradiction to this testimony, defendant claimed that the police never asked for his permission to search the house and he did not sign a consent to search form prior to the search. After hearing this testimony and evaluating the credibility of the witnesses, the trial judge chose to believe the police officers' version of the search over defendant's, and concluded that defendant had voluntarily consented to the search. Our review of the record does not show he abused his discretion in so concluding, and accordingly, he did not err in overruling defendant's motion to suppress the evidence and his objection at trial to its introduction in evidence.

Assignment of Error Number 10
Defense counsel contends the trial judge erred in denying his motion for a new trial on the ground that the state systematically excluded blacks from the jury. Defendant relies on the fact that the state exercised nine peremptory challenges, eight of which excluded every black person called and one of which excluded a white individual.
The circumstance that, in a particular case, the state may have used its peremptory challenges to exclude members of a minority does not constitute a denial of constitutional rights. A defendant has the burden of establishing a systematic exclusion of the minority over a period of time. Swain v. Alabama, 380 U.S. 202, 85 S.Ct. 824, 13 L.Ed.2d 759 (1965); State v. Brown, 371 So.2d 751 (La.1979); State v. Rhodes, 351 So.2d 103 (La.1977).
Defendant made no attempt to show a pattern of systematic exclusion of black jurors by the state. Therefore, this assignment is without merit.

Assignment of Error Number 2
Defense counsel contends the trial court erred in denying counsel's pre-trial motion to suppress the rape victim's out-of-court identification of defendant.
On October 9, 1978, the night of the rape, the victim described the rapist to Detective Susan Miller. Because this description of the assailant fit the description of someone she had arrested a year earlier (the defendant in this case), Detective Miller decided to conduct a photographic line-up. At approximately one o'clock in the morning on October *1377 10, 1978, Miller obtained a photograph of defendant, combined it with four other photographs, and asked the victim to view the five photographs to determine if she could identify the rapist. The victim selected the photograph of defendant as depicting her attacker except that she could not be sure if the man in the photograph had the same eyes as the rapist because defendant's eyes were partially closed in this particular photograph. She asked Detective Miller if she could view a photograph which depicted defendant with his eyes open.
On the evening of October 10, the victim viewed another photographic show-up. The photographs used in this second display were the same as those used in the first, except that Detective Miller substituted a photograph of defendant with his eyes open for the photograph of defendant used in the first photographic show-up. The victim again identified defendant as the rapist. Because this second photograph of defendant in which his eyes were open was more yellowed by age than the other four photographs shown the victim, defense counsel claims the identification procedure singled out defendant and thus, was suggestive.
A line-up is unduly suggestive if the identification procedure displays the defendant so that the witness' attention is focused on the defendant. For example, distinguishing marks on the photographs may single out defendant. State v. Guillot, 353 So.2d 1005 (La.1977). A line-up can also be suggestive if a sufficient resemblance of physical characteristics and features of persons in the line-up does not exist to reasonably test the identification. State v. Guillot, supra; State v. Gray, 351 So.2d 448 (La.1977); State v. Anthony, 347 So.2d 483 (La.1977). Even if an identification procedure is suggestive, it will not result in reversal of a conviction if it is demonstrated that the identification was reliable. Manson v. Brathwaite, 432 U.S. 98, 97 S.Ct. 2243, 53 L.Ed.2d 140 (1977); State v. Guillot, supra.
The yellowed tint of the photograph of defendant indicates that the photograph is older than the other four photographs viewed by the victim, but that fact alone does not suggest to the witness that the officers suspected defendant to be the rapist. In addition, the victim testified she did not even notice that one photograph was more yellowed than the others. Consequently, we do not believe the yellowed tint of the photograph caused the witness' attention to focus on the defendant as a suspect so as to make the procedure impermissibly suggestive.
Further, the photographs used in the line-up depict individuals with sufficient resemblance of characteristics (e. g. hair length, facial hair, skin color and complexion, build and facial features such as chin, nose, etc.) to reasonably test identification.
This assignment is without merit.

Assignment of Error Number 5
Defense counsel claims defendant was denied a fair trial in violation of due process of law because the state lost certain evidence. U.S.Const. amend. 14; La.Const. art. 1, § 2.
At the preliminary examination the defense learned that a sample of combed pubic hairs had been taken from the victim. The state planned to test the hairs to see if any foreign hairs were present, and if foreign hairs were found, they were to be compared with the pubic hairs of defendant.
At trial, Linda Reel, expert from the Jefferson Parish Sheriff's Office Crime Laboratory, testified that when she received the envelope listed as containing the pubic hairs combed from the victim, the envelope was empty. Thus, she was never able to determine if any foreign hairs were present.
Defense counsel points out that if the state had not lost the sample, foreign hairs, which belonged to a person other than defendant, might have been found. Thus, the sample might have helped to prove defendant's innocence.
There is no way to predict what the test results would have proved. Linda Reel, the expert examiner, could have discovered *1378 hairs of the defendant, or of a third person, or no foreign hairs at all. The mere possibility that the tests might have produced evidence favorable to the defendant does not mean the failure to conduct the tests because of the lost sample denied defendant a fair trial.
This assignment is without merit.
For the above reasons, the conviction and sentence of defendant are affirmed.
AFFIRMED.
DENNIS and CALOGERO, JJ., dissent and assign reasons.
DENNIS, Justice, dissenting.
I respectfully dissent.
I cannot agree that this black defendant, tried by an all white jury for rape of a white victim, was not deprived of his constitutional rights to a fair trial and to freedom from racial discrimination when the prosecuting attorney was allowed untrammeled discretion to remove all blacks from the jury by exercising eight of nine peremptory challenges against prospective black jurors.
CALOGERO, Justice, dissenting.
I dissent for the reasons assigned by Dennis, J. However, I have some additional reservations about this case. I am impressed by the fact that suspicion was focused on the suspect not by any concrete evidence, but by the fact that the woman police officer handling the case had arrested defendant earlier on another charge. She placed his photograph in a lineup and was only able to secure a positive identification from the victim when she put a second (yellow-tinted) photograph of this same defendant in a second photographic lineup.
I also have reservations about assignment of error number one concerning the voluntariness of defendant's consent to search, although the prejudice suffered by defendant as a result of the search was not necessarily great. The only evidence of significance seized was a pair of shoes which the victim testified looked similar to the shoes worn by the rapist.
NOTES
[*] Chief Judge Frederick S. Ellis participated in this decision as Associate Justice Ad Hoc.