. JUDE G. GRAVOIS, Judge.
| ^Defendant, Ronald Fairman, Jr., appeals his convictions and sentences for pos *1282 session of a firearm by a convicted felon, battery of a police officer, battery of a police officer producing injury requiring medical attention, and resisting an officer with the use or threats of violence. For the following reasons, we affirm defendant’s convictions, vacate his habitual offender sentence, and remand the matter for resentencing and for correction of the commitments as noted herein.

PROCEDURAL HISTORY

On March 18, 2014, the Jefferson Parish District Attorney filed a bill of information charging defendant with one count of possession of a firearm by a convicted felon, in violation of La. R.S. 14:95.1[1] (count one); one count of attempted disarming of a peace officer, in violation of La. R.S. 14:27 and 14:34.6 (count two); two counts of resisting an officer with the use of violence or threats of 1 ./violence, in violation of La. R.S. 14:108.2 (counts three and four); and one count of battery of a police officer producing injury requiring medical attention, in violation of La. R.S. 14:34.2 (count five). Defendant entered a plea of not guilty to the charged offenses at his arraignment on March 24, 2014. Subsequent to pleading not guilty, defendant filed several pretrial motions, including a motion to suppress evidence, which was denied on June 19, 2014.
The matter proceeded to trial before a twelve-person jury on August 19, 2014. The following day, the jury returned a verdict of guilty as charged to all counts except count two (attempted disarming of a peace officer), instead, finding defendant guilty of the responsive verdict of battery of a police officer.
On August 28, 2014, the trial court sentenced defendant to twenty years imprisonment at hard labor, without the benefit of parole, probation, or suspension of sentence, and imposed a one thousand dollar fine on count one; six months in parish prison on count two; three years imprisonment at hard labor on each of counts three and four; and five years imprisonment at hard labor without the benefit of parole, probation, or suspension of sentence on count five. The court further ordered defendant’s sentences on counts one through four to be served concurrently with each other and ordered the sentence on count five to be served consecutive to the sentences on counts one through four.
On September 2, 2014, defendant filed a motion for reconsideration of sentence and a motion for an appeal.[2] The State filed a habitual offender bill of information, alleging defendant to be a fourth felony offender. Defendant denied the allegations in the habitual offender bill. Following a hearing on October 9, 2014, the trial court adjudicated defendant a fourth felony offender and vacated |4defendant’s original sentence on count five. The trial court resentenced defendant on count five as a fourth felony offender, under La. R.S. *1283 15:529.1, to twenty-five years imprisonment at hard labor, without the benefit of probation or suspension of sentence, to run concurrently with counts one through four, The trial court denied defendant’s motion to reconsider his original sentences[3] and granted his motion for an appeal. Defendant’s appeal follows.

FACTS

In the early morning hours of February 9, 2014, the police received a 9-1-1 call that an African-American man wearing an army jacket was inside of PeeWee’s Lounge located on the Westbank Expressway in Marrero, Louisiana, and was threatening patrons in the bar with a firearm.[4] Uniformed Deputies Troy Smith and David Lowe of the Jefferson Parish Sheriffs Office responded to the call. When the officers arrived at the bar, they spoke to the doorman. The officers then elected to go inside of the bar, which they described as crowded and loud, to investigate. Upon scanning the crowd, the officers observed a man wearing a camouflage jacket and gray sweatpants standing at the bar. They believed the man fit the description given by the 9-1-1 caller.
Defendant observed the officers and began walking towards the exit. In an attempt to speak with defendant, Deputy Smith stepped into his path and extended his hand, motioning for defendant to step outside. Before he could state his request to speak with him, defendant “slapped” Deputy Smith’s hand away and attempted to push Deputy Lowe out of the way. According to Deputy Smith, defendant then started “throwing punches” and tried “backpedaling” away from the officers, |^Attempting to gain control over defendant, Deputy Lowe “bear-hugged” him and everyone fell to the ground where a struggle ensued.
While on the ground, Deputy Smith saw defendant put his hand on Deputy Lowe’s holster and tug on the grip of his gun. In response, Deputy Smith drew his weapon, held it under defendant’s chin, and ordered defendant to release Deputy Lowe’s gun. Defendant complied and Deputy Smith re-holstered his weapon; however, defendant continued to punch and kick the officers. Deputy Lowe testified that he then placed defendant in a “carotid artery restraint,” and defendant either “lost conscious or gave up,” allowing him to roll defendant over and place a handcuff on defendant’s right wrist. While attempting to handcuff his left wrist, defendant “either woke up or he pushed up on the ground,” turned around, and punched Deputy Lowe in the face. Deputy Lowe testified that it was at this time that defendant “busted [his] lip open.” Deputy Lowe later received medical attention for his lacerated lip. While still struggling with .defendant, Deputy Lowe then reached for his Taser, which fell to the ground. However, Deputy Smith was able to retrieve the Taser and use it on defendant.[5]
*1284 With the assistance of back-up officers, defendant was eventually handcuffed and searched. A gun was recovered in the waistband area of defendant’s sweatpants.[6]
Defendant testified that he did not have a weapon on him at Pee-Wee’s Lounge on the night in question. He testified that he was standing at the bar when Deputy Lowe grabbed his arm and “yanked” it behind his back pushing him ^towards the door. Defendant recalled that he “jerked” his arm back and turned around to confront the person. He claimed that at the time he did not know the person who grabbed him was a police .officer. He explained that Deputy Lowe then grabbed him from behind, at which point they fell to the ground, and he was placed in a choke hold until he lost consciousness. The last thing defendant recalled was waking up in handcuffs and being tased. He stated that he never struck Deputy Lowe and did not know how Deputy Lowe sustained his injury. He denied ever punching either officer. He further denied waving a gun at anyone inside the bar.
ASSIGNMENT OF ERROR NUMBER TWO[7]

Sufficiency of the evidence

In his second assignment of error, defendant claims that his convictions for resisting arrest and battery of a police officer must be reversed because he was resisting an unlawful arrest. He contends that the officers did not have probable cause to arrest him because they had been told that the person who was reportedly waving the gun had left the bar,[8] they did not observe him doing anything unlawful, and no one identified him as the person who had been waving the gun. Defendant submits that because probable cause to arrest him did not exist, he had the right to resist the unlawful arrest.
The State responds that when defendant battered one of the officers while attempting to leave the bar, the officers had probable cause to arrest him.
In reviewing the sufficiency of the evidence, an appellate court must determine if the evidence, whether direct or circumstantial, or a mixture of both, 17viewed in the light most favorable to the prosecution, was sufficient to convince a rational trier of fact that all of the elements of the crime have been proven beyond a reasonable doubt. Jackson v. Virginia, 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979); State v. Mickel, 09-953 (La.App. 5 Cir. 5/11/10), 41 So.3d 532, 534, writ denied, 10-1357 (La.1/7/11), 52 So.3d 885. A review of the record for sufficiency of the evidence does not require the court to ask whether it believes that the evidence at the trial established guilt beyond a reasonable doubt. State v. *1285 Jones, 08-20 (La.App. 5 Cir. 4/15/08), 985 So.2d 234, 240. Rather, a reviewing court is required to consider the whole record and determine whether a rational trier of fact would have found the State proved the essential elements of the crime beyond a reasonable doubt. Id.
Defendant does not deny the allegations against him, nor does he contest that the State failed to prove any of the essential statutory elements of the crimes for which he was convicted. Thus, the sufficiency of the evidence with respect to the statutory elements need not be addressed.[9] See State v. Henry, 13-558 (La.App. 5 Cir. 3/26/14), 138 So.3d 700, 715, writ denied, 14-0962, 159 So.3d 1064 (La.2/27/15). Rather, defendant claims that his convictions must be overturned as lawful resistance to an unlawful arrest.[10]
 An individual in Louisiana has a time-honored right to resist an illegal arrest. City of Monroe v. Goldston, 95-0315 (La.9/29/95), 661 So.2d 428, 430; White v. Morris, 345 So.2d 461, 465 (La.1977). However, that right is only available where the arrest is illegal and is tempered by the requirement that in preventing such illegal restraint of his liberty, he may use only “such force as may be | snecessary.” City of Monroe v. Ducas, 203 La. 971, 14 So.2d 781, 784 (1943). Thus, the issue is whether the police had lawful grounds, or probable cauge, to arrest the defendant.
 Probable cause to arrest exists when the facts and circumstances within an officer’s knowledge, and of which he has reasonable and trustworthy information, are sufficient to justify a man of average caution in the belief that the accused has committed an offense. Probable cause to arrest is not absolute cause, and to determine its existence, courts must examine facts and circumstances within the arresting officer’s knowledge in light of the experience of reasonable people, not legal technicians. State v. Scales, 93-2003 (La.5/22/95), 655 So.2d 1326, 1331, cert. denied, 516 U.S. 1050, 116 S.Ct. 716, 133 L.Ed.2d 670 (1996). Furthermore, probable cause, and not absolute certainty, is the test to be applied in judging the validity of an arrest, and all possible lawful explanations of a situation need not be negated before making an arrest. State v. Winfrey, 359 So.2d 73 (La.1978); State v. Phillips, 347 So.2d 206 (La.1977).
Here, defendant argues that the officers had no valid grounds to arrest him, justifying his resisting an unlawful arrest. Defendant however confuses the issue as it pertains to the crimes for which he was arrested. Had the officers immediately arrested defendant upon entering the bar for the crime which the anonymous caller reported, i. e., threatening people inside the bar with a firearm, the arrest would have been lacking in probable cause and defendant would have been justified in resisting an unlawful arrest. However, defendant was arrested not based on the reported crime, but rather for the violent resistance he committed upon the officers when they approached him merely to speak with him about the call they had received.
In Florida v. Royer, 460 U.S. 491, 103 S.Ct. 1319, 75 L.Ed.2d 229 (1983), the Supreme Court set forth the distinc *1286 tion between a permissible encounter and a seizure. The court held that a law enforcement officer does not violate the Fourth Amendment by merely approaching an individual in a public place and asking him if he is willing to answer some questions. Id. The person approached, however, need not answer any question put to him; indeed, he may decline to listen to the questions at all and may go on his way. Id., citing Terry v. Ohio, 392 U.S. 1, 32-33, 88 S.Ct. 1868, 1885-86, 20 L.Ed.2d 889 (1968) (Harlan, J. concurring); Id. at 34, 88 S.Ct. at 1886 (White, J. concurring). If there is no detention — no seizure within the meaning of the Fourth Amendment — then no constitutional rights have been infringed. Id.
In the instant case, as previously noted, the anonymous 9-1-1 call was insufficient to establish probable cause by itself; thus, the officers responded to the bar to investigate. Upon entering the bar, they observed a man, later identified as defendant, matching the description provided by the caller. Defendant then “slapped” Deputy Smith’s hand away when he attempted to motion for defendant to step outside so they could speak to him about the 9-1-1 call. The testimony at trial established that defendant also attempted to push past Deputy Lowe and started “throwing punches,” after which Deputy Lowe “bear-hugged” him and they fell to the ground where a struggle ensued before he was able to be restrained and placed under arrest.
Under the facts of this case, probable cause to arrest defendant occurred after the officers approached defendant to speak with him and were met with violent resistance.[11] Defendant did not simply “ignore” Deputy Smith’s outstretched hand Imand continue to walk towards the exit as defendant argues.[12] Instead, defendant slapped the officer’s hand and started an altercation with the officers resulting in his arrest. Thus, the battery/resistance was not justified and in defense of an unlawful arrest because the battery is the reason defendant was arrested. Accordingly, this assignment of error is without merit.

ASSIGNMENT OF ERROR NUMBER ONE

Denial of motion to suppress

In this assignment of error, defendant argues that the trial court erred in denying his motion to suppress because the handgun seized from him was the result of an unlawful arrest. Defendant maintains that in the “exchange” with the officers, the officers were the aggressors. He alleges that he was attempting to leave the bar when the officers stepped in front of him to prevent him from leaving. Accordingly, defendant contends that an arrest occurred when he was grabbed and thrown to the ground before he had a chance to respond to Deputy Smith’s request to speak with him. Thus, defendant *1287 concludes that because his arrest was unlawful, the trial court erred in denying his motion to suppress.
The State responds that the officers had the right to arrest defendant who battered one of the officers upon his approach and request to speak with defendant regarding a complaint concerning a patron in the bar waiving a gun and matching defendant’s description. Once defendant committed the battery, the State argues that defendant was then subject to arrest, and because the arrest was lawful, the motion to suppress was properly denied.
InOn April 4, 2014, defendant filed a motion to suppress asserting that the evidence was seized without a valid exception to the warrant requirement and without probable cause to arrest and/or search defendant. A hearing on defendant’s motion to suppress was held on June 19, 2014. At the motion hearing, Deputy Smith testified substantially similar to the testimony he provided at trial.
In summary, Deputy Smith testified at the motion to suppress hearing that he and Deputy Lowe responded, in full uniform, to a complaint regarding a suspicious person inside of a bar threatening patrons with a handgun. Upon arrival at the bar, the doorman told the officers that he “thought” the subject of the complaint had left, but that he would “go inside to make sure.” The doorman went inside the bar, but never returned. As a result, the officers entered the bar to investigate. Once inside, they observed a man matching the description provided by the complainant and approached to speak with him about the complaint. Deputy Smith testified that the bar was “very crowded, very loud,” so he stepped in front of defendant and began to make a motion with his hand to signal defendant to step outside. According to Deputy Smith, defendant slapped his hand out of the way and pushed both he and Deputy Lowe. Deputy Lowe attempted to “get a compliance hold” on defendant, and the trio fell to the ground and “began fighting.” While on the ground, Deputy Smith observed defendant tugging on the handle of Deputy Lowe’s gun. Defendant was eventually tased and placed under arrest. Pursuant to a search incident to arrest, a handgun was found on defendant’s person.
At the conclusion of the hearing, the trial court denied the motion to suppress, stating the following:
The Court doesn’t even find that there was a stop. They approached a person who they thought met the description, and when they simply asked him to speak, he committed a battery upon a police officer and continued to commit offenses thereafter, which he was arrested for.
| 12The search incidental — the search was incident to a proper arrest. The motion to suppress is denied.
In a hearing on a motion to suppress, the State bears the burden of proof in establishing the admissibility of evidence seized without a warrant. La. C.Cr.P. art. 703(D). The trial court’s decision to deny a motion to suppress is afforded great weight and will not be set aside unless the preponderance of the evidence clearly favors suppression. State v. Ayche, 07-753 (La.App. 5 Cir. 3/11/08), 978 So.2d 1143, 1148, writs denied, 08-2291 (La.1/30/09), 999 So.2d 752 and 08-1115 (La.2/13/09), 999 So.2d 1140. Moreover, a trial court’s pre-trial findings of fact involving the credibility of witnesses are entitled to great weight and will not be disturbed in the absence of clear abuse of discretion. State v. Yarbrough, 418 So.2d 503 (La.1982); State v. Robinson, 386 So.2d 1374 (La.1980); State v. Dunbar, 356 So.2d 956 (La.1978).
*1288 As previously mentioned, a law enforcement officer does not violate the Fourth Amendment by merely approaching an individual in a public place and asking him if he is willing to answer some questions. See Florida v. Royer, supra. Here, the testimony adduced at the suppression hearing and at trial[13] established that at the time the officers approached defendant to speak with him about the complaint, there was no detention, and therefore, defendant was not seized within the meaning of the Fourth Amendment. Contrary to defendant’s contention, the trial court did not believe that defendant simply “walked away” and disregarded the officer’s request to speak with him. Rather, when the officers approached him, defendant | ^“immediately” slapped Deputy Smith’s hand away, attempted to push past the officers, and started “throwing-punches,” causing the trio to fall to the ground where a violent struggle — in an attempt to detain defendant — ensued. Having committed' a battery when approached by the officers who only wished to speak to defendant, the officers had probable cause to arrest defendant based on the crimes committed on the officers.
Thus, defendant’s arrest was lawful and responsive to defendant’s criminal actions upon the officers. Accordingly, the handgun recovered from defendant was seized during a valid search incident to arrest, one of the recognized exceptions to the Fourth Amendment’s warrant requirement. Chimel v. California, 395 U.S. 752, 763, 89 S.Ct. 2034, 2040, 23 L.Ed.2d 685 (1969); State v. Andrishok, 434 So.2d 389, 391 (La.1983).
Upon review, we find that the preponderance of the evidence at the suppression hearing did not clearly favor suppression of the handgun in this case. Accordingly, the trial court did not err in denying defendant’s motion to suppress. This assignment of error is without merit.

ASSIGNMENT OF ERROR NUMBER THREE

Double jeopardy

In his third assignment of error, defendant argues that his convictions for battery of a police officer producing an injury requiring medical attention (count five) and the responsive verdict of battery of a police officer (count two) constitute double jeopardy. He claims that there is a double jeopardy violation under the “same evidence test,” because the evidence required to support a finding of guilt of battery of a police officer producing an injury requiring medical attention also supports a conviction of battery of a police | nofficer. Accordingly, defendant maintains that the less severely punishable crime — battery of a police officer — must be vacated.
In response, the State asserts that each of the batteries committed by defendant on Officer Lowe were separate and distinct physical events that were proven independently of each other, and thus, defendant was lawfully subjected to prosecution for each offense without violating the prohibition against double jeopardy.
La.C.Cr.P. art. 591 provides, in pertinent part: “[n]o person shall be twice put in jeopardy of life or liberty for the same offense ... ”. Although defendant did not *1289 raise the issue of double jeopardy at trial, a claim of double jeopardy may be raised at any time, and thus, the matter appears to be properly before this Court for the first time on appeal. La.C.Cr.P. art. 594.
The Fifth Amendment to the United States Constitution, as well as Article 1, § 15 of the Louisiana Constitution of 1974, prohibit placing a person twice in jeopardy of life or limb for the same offense. State v. Garcia, 10-755 (La.App. 5 Cir. 5/10/11), 66 So.3d 24, 27 (citations omitted). The concept of double jeopardy, under both the federal and state constitutions, embodies the dual purpose of preventing both multiple punishments and multiple convictions for a single criminal wrong. Id. (citation omitted.) Thus, every double jeopardy analysis begins with the inquiry as to whether a single offense or several offenses are involved. Id.
Louisiana courts utilize two tests in examining violations of double jeopardy. Garcia, 66 So.3d at 27. The “distinct fact” or Blockburger[14] test requires that, when conduct constitutes a violation of two or more distinct statutory provisions, the provisions must be scrutinized to confirm that each 11fidemands proof of an additional fact. State v. Knowles, 392 So.2d 651, 654 (La.1980).
The other test, is the “same evidence test.” The same evidence test focuses upon the actual evidence necessary to secure a conviction and is primarily relied upon by Louisiana courts. Garcia, supra; State v. Steele, 387 So.2d 1175, 1177 (La.1980). This test depends upon the proof required to convict, not the evidence actually introduced at trial. Thus, under the same evidence test, the court’s concern is with the “evidential focus” ,of the facts adduced at trial in light of the verdict rendered, ie., how the evidence presented goes to satisfy the prosecution’s burden of proof. State v. Coody, 448 So.2d 100, 102-03 (La.1984). Therefore, if the evidence required to support a finding of guilt of one crime would also support a conviction for another offense, the defendant can be placed in jeopardy for only one of the two.’ Knowles, 392 So.2d at 654. The “same evidence test” is slightly broader in concept than Blockburger — the central idea being that one should not be punished twice for the same course of conduct. Garcia, supra.
For example, the Double Jeopardy Clause prevents an offender from being convicted of both felony murder and the underlying felony. It also prevents an offender from being convicted of both the underlying offense for a La. R.S. 14:95(E) violation and the La. R.S. 14:95(E) violation itself.[15] See State ex rel. Adams v. Butler, 558 So.2d 552, 553 (La.1990); State of Louisiana in the Interest of S.L., 11-883 (La.App. 5 Cir. 4/24/12), 94 So.3d 822. While there are no reported Louisiana cases that have addressed double jeopardy as applied to battery of a police *1290 officer and its apparent subpart of battery of a police officer requiring medical attention, it appears that the respective convictions in the instant matter required use of different facts/evidence to support them.
Specifically, in this case, defendant was originally charged on count two with at-témpted disarming of a peace officer, but was convicted of the responsive verdict of battery of a police officer (Deputy Lowe). Battery of a police officer has three elements: the intentional use of force upon a police officer, without the consent of the officer, when the offender knows or should reasonably know that the victim is a police officer acting within the performance of his duty. La. R.S. 14:34.2; State v. Ceaser, 02-3021 (La.10/21/03), 859 So.2d 639, 643.
Defendant was also convicted on count five of battery of a police officer (Deputy Lowe) producing injury requiring medical attention. In order to convict a defendant of this crime, the State must prove all of the same elements as battery of a police officer, in addition to proving that the use of force or violence produced an injury which required medical attention. La. R.S. 14:34.2(B)(3).
A strict reading of these statutes does appear to create the presumption of a double jeopardy violation. However, based on the facts adduced at trial, the evidence which supported defendant’s La. R.S. 14:34.2 conviction were different from the evidence used to support his La. R.S. 14:34.2(B)(3) conviction.
In particular, the testimony of Deputies Smith and Lowe indicate that separate incidents occurred, which support defendant’s convictions for both 117offenses. The record indicates that once Deputy Lowe tackled defendant to the ground, a violent struggle ensued during which Deputy Smith observed defendant put his hand on Deputy Lowe’s holster and tug on the grip of his gun. Defendant complied with Deputy Smith’s order to release Deputy Lowe’s gun; however, defendant continued to punch and kick the officers. It was at this time that the elements for the responsive verdict of battery of a police officer were fulfilled. Up to this point, there was no evidence to indicate that a battery upon Deputy Lowe producing injury requiring medical attention had transpired.
After the initial battery of Deputy Lowe had occurred, Deputy Lowe was able to put defendant into a “sleeper hold” in an attempt to gain control over him. While attempting to handcuff defendant, defendant “either woke up or he pushed up on the ground” and reached over his shoulder and punched Deputy Lowe in the face. Deputy Lowe testified that it was at this time that his lip was “busted open” by defendant. The laceration Deputy Lowe sustained to his lip required medical treatment.
Based on the testimony, we find that the record includes evidence of a battery which occurred at the time defendant attempted to disarm Deputy Lowe and a battery which occurred while attempting to handcuff defendant which caused Deputy Lowe injury requiring him to seek medical attention. With two separate and distinct offenses committed during the same criminal episode, and supported by corresponding separate and distinct facts, we find that application of both the “distinct facts” and the “same evidence” tests demonstrates that no double jeopardy violation exists. Accordingly, this assignment of error is without merit.
L ERRORS PATENT REVIEW
The record was reviewed for errors patent, according to La.C.Cr.P. art. 920, State v. Oliveaux, 312 So.2d 337 (La.1975), and State v. Weiland, 556 So.2d 175 (La.App. 5 Cir.1990).

*1291
Patent Error Number One

There are several discrepancies between the transcript and the original commitment, habitual offender bill commitment, and both State of Louisiana Uniform Commitment Orders which correspond to the original and habitual offender bill commitments.
First, according to the commitment, habitual offender bill commitment, and both of the corresponding Uniform Commitment Orders, defendant was found guilty-on count two of attempted disarming of a police officer, a violation of La. R.S. 14:27 and 14:34.6. However, according to the transcript, defendant was found guilty on count two of the responsive verdict of battery of a police officer, a violation of La. R.S. 14:34.2. Second, according to the commitment, habitual offender bill commitment, and both Uniform Commitment Orders, the trial court imposed a six-year sentence at hard labor on count two. However, according to the transcript, defendant was sentenced to six months in parish prison on count two. Third, the commitment and the corresponding Uniform Commitment Order fail to reflect the one thousand dollar fine that the trial court imposed with respect to count one. Fourth, the adjudication date is incorrect on both the original Uniform Commitment Order and the habitual offender bill Uniform Commitment Order. Specifically the Uniform Commitment Orders reflect an August 28, 2014 adjudication date, rather than the correct August 20, 2014 date indicated by the record. Lastly, the Uniform Commitment Orders do not reflect the date of the habitual offender bill resen-tencing on count five.
113Generally, when there are discrepancies between the minutes and the transcript, the transcript prevails. State v. Lynch, 441 So.2d 732, 734 (La.1983). Because the commitments and Uniform Commitment Orders appear to indicate attempted disarming of a police officer as the charge on count two, reflect an incorrect sentence on count two, and fail to reflect the one thousand dollar fine imposed on count one, we remand this matter to allow the trial judge to correct the commitments and Uniform Commitment Orders to conform to the transcripts. See State v. Addison, 05-378 (La.App. 5 Cir. 12/27/05), 920 So.2d 884, 898-99, writ denied, 06-1087 (La.11/9/06), 941 So.2d 36. We also remand this matter and order that the original and habitual offender bill Uniform Commitment Orders be corrected to reflect the correct date of adjudication and to add the date of the habitual offender bill resentencing. See State v. Lyons, 13-564 (La.App. 5 Cir. 1/31/14), 134 So.3d 36, 41, writ denied, 14-0481 (La.11/7/14), 152 So.3d 170 (citing State v. Long, 12-184 (La.App. 5 Cir. 12/11/12), 106 So.3d 1136, 1142).
We further direct the Clerk of Court for the 24th Judicial District Court to transmit the original of the corrected commitments and Uniform Commitment Orders to the officer in charge of the institution to which defendant has been sentenced and the Department of Corrections’ Legal Department. See Long, 106 So.3d at 1142; La. C.Cr.P. art. 892(B)(2).

Patent Error Number Two

It appears that defendant’s sentence on count two is illegally lenient in that it was imposed without the mandatory fine. Count two — battery of a police officer, La. R.S. 14:34.2(B)(1) — provides for a fine of “not more than five hundred dollars.” Neither party raises this issue. Defendant appears indigent, as reflected by his representation in this matter by the Louisiana Appellate Project. As such, even though we find that defendant’s sentence on count two is illegally lenient | ^because of the lack of a fine, we decline to disturb defen *1292 dant’s sentence. See State v. Campbell, 08-1226 (La.App. 5 Cir. 5/26/09), 15 So.3d 1076, 1081, writ denied, 09-1385 (La.2/12/10), 27 So.3d 842.

Patent Error Number Three

Further, defendant’s sentence on count two is illegally lenient because it was imposed without a restriction on suspension of sentence. La. R.S. 14:34.2(B)(1) provides that the sentence imposed shall be “without benefit of suspension of sentence.” Under La. R.S. 15:301.1 and State v. Williams, 00-1725 (La.11/28/01), 800 So.2d 790, 799, a statute’s requirement that a defendant be sentenced without the benefit of parole, probation, or suspension of sentence is self-activating. Moreover, defendant’s sentence was not suspended rendering this issue moot. Therefore, no corrective action is required.

Patent Error Number Four

Next, defendant was not advised of his rights before the habitual offender proceeding.[16] La. R.S. 15:529.1 provides that the trial court shall inform defendant of the allegations contained in the bill of information, his right to be tried as to the truth thereof according to law, and shall require the offender to say whether the allegations are true. La. R.S. 15:529.1 also implicitly requires that the trial court advise defendant of his right to remain silent. State v. Johnson, 432 So.2d 815, 817 (La.1983).
The failure of a trial court to advise the defendant of his right to a hearing and his right to remain silent is not considered reversible error when the defendant’s habitual offender status is established by competent evidence offered | ¡^by the State at a hearing, rather than by admission of the defendant. State v. Bell, 03-217 (La.App. 5 Cir. 5/28/03), 848 So.2d 87, 90.
Upon review, we find that the State introduced sufficient proof through competent evidence that defendant was the person who committed and was convicted of the predicate offenses of possession of marijuana-third offense, a violation of La. R.S. 40:966(C) on February 7, 2006; possession of alprazolam, a violation of La. R.S. 40:969(C) on July 13, 2012; and possession of oxycodone, a violation of La. R.S. 40:967(C) on November 6, 2006. The State introduced proof of defendant’s identity to the alleged predicate offenses through certified conviction packets and the testimony of a fingerprint expert. Thus, we find that the trial court’s failure to advise defendant of his habitual offender rights before the habitual offender proceeding is not a reversible error requiring corrective action.

Patent Error Number Five

Lastly, defendant’s enhanced sentence on count five, battery of a police officer producing an injury that requires medical attention, must be vacated and the case remanded for resentencing on that count because the trial judge did not order that at least thirty days of the sentence be served without the benefit of parole.
The trial judge vacated defendant’s original sentence on count five and resen-tenced defendant as a fourth felony offender to imprisonment at hard labor for twenty-five years without the benefit of probation or suspension of sentence. La. R.S. 15:529.1(G) provides that the enhanced sentence shall be without the benefit of probation or suspension of sentence; *1293 however, La. R.S. 14:34.2(B)(3), the underlying felony, provides that “at least thirty days of the sentence” imposed shall be served without benefit of parole.
Because the underlying offense carries a parole restriction, the habitual offender sentence is to likewise be imposed without parole. See State v. Smith, 09-100 (La.App. 5 Cir. 8/25/09), 20 So.3d 501, 509, writ denied, 09-2102 (La.4/5/10), 31 So.3d 357. Since the trial judge did not restrict parole in any way in imposing the enhanced sentence, and the statute requires an exercise of the trial court’s sentencing discretion in limiting parole eligibility, we find that defendant’s enhanced sentence should be vacated and the matter remanded for resen-tencing on count five in accordance with the underlying statute. See Smith, supra.

CONCLUSION

For the foregoing reasons, defendant’s convictions are affirmed, defendant’s habitual offender sentence is vacated and the matter is remanded for resentencing, and the matter is remanded for correction of the commitments-as noted herein.

CONVICTIONS AFFIRMED: HABITUAL OFFENDER SENTENCE VACATED: REMANDED FOR RESENTENC-ING WITH INSTRUCTIONS AND CORRECTION OF COMMITMENTS

. The predicate offense(s) in relation to this charge as referenced in the bill of information indicates that defendant was previously convicted of possession of alprazolam and fourth offense possession of marijuana, in violation of La. R.S. 40:969(C) and 40:966(C), under case number 12-2755, Division "J", and/or possession of oxycodone, in violation of La. R.S. 40:967(C), under case number 06-4163, Division "C", and/or two counts of possession with the intent to distribute cocaine, in violation of La. R.S. 40:967(A), under case number 99-1479, Division "B”, of the Twenty-Fourth Judicial District Court, Parish of Jefferson.

. Defendant's motion for an appeal was premature when it was filed after he was convicted and originally sentenced, but before he was resentenced as a habitual offender. However, this procedural defect was cured by the subsequent resentencing. See State v. Balser, 96-443 (La.App. 5 Cir. 11/14/96), 694 So.2d 351, 354.

. Defendant's motion for reconsideration of sentence filed before his habitual offender bill resentencing only challenged his original sentences imposed on August 28, 2014.

. The 9-1-1 recording made on February 9, 2014 at 3:23 a.m., which was authenticated by Nancy Webber of the Jefferson Parish Sheriff's Office, was played for the jury.

. Deputy Smith's recollection differs slightly. Deputy Smith testified that defendant punched Deputy Lowe in the mouth prior to being tased. However, he also testified that "once he was tased, he started squirming. Lowe still had a hold on him by the neck trying to get control of him, and that's when Mr. Fairman, with his left hand, started doing one of those numbers (indicating), because Deputy Lowe's face was here, started doing this (indicating) over his own shoulder. Punching Deputy Lowe in the face.”

. Once defendant was in custody, the officers learned that defendant was on active probation and had a criminal history. Donna Quintanilla, an expert in latent print analysis and employee of the Jefferson Parish Crime Laboratoiy, testified that defendant’s fingerprints matched those fingerprints contained on the certified conviction packets for defendant's prior convictions for two counts of distribution of cocaine, possession of oxyco-done, possession of marijuana-fourth offense, and possession of alprazolam.

. Assignment of error number two relates to the sufficiency of the evidence with respect to defendant's convictions for resisting arrest and battery of a police officer. When the issues on appeal relate to both the sufficiency of evidence and one or more trial errors, the reviewing court should first determine the sufficiency of the evidence. State v. Hearold, 603 So.2d 731, 734 (La.1992). Therefore, this assignment will be addressed before defendant’s other assigned errors.

. This information was adduced at the motion to suppress hearing, not at trial.

. Although defendant does not challenge the sufficiency of the elements of the crimes for which he was convicted, under State v. Raymo, 419 So.2d 858, 861 (La.1982), we considered the sufficiency of the evidence on our errors patent review and determined that all statutory elements of the crimes for which defendant was convicted have been proven by the State.

. The alleged unlawful arrest is also raised and addressed in .defendant’s assignment of error number one.

. Under La.C.Cr.P. art. 213(A)(1), a police officer may, without a warrant, arrest a person when "the person to be arrested has committed an offense in his presence.” See State v. Noto, 596 So.2d 416 (La.App. 4th Cir.1992).

. When presented with this evidence at trial, apparently the jury chose to believe the testimony of Deputies Smith and Lowe over that of defendant. It is not the function of the appellate court to assess credibility or reweigh the evidence. State v. Smith, 94-3116 (La.10/16/95), 661 So.2d 442, 443. The trier of fact shall evaluate credibility, and when faced with a conflict in testimony, is free to accept or reject, in whole or in part, the testimony of any witness. State v. Bradley, 03-384 (La.App. 5 Cir. 9/16/03), 858 So.2d 80, 84, writ denied, 03-2745 (La.2/13/04), 867 So.2d 688.

. Although not required to do so, an appellate court may review the testimony adduced at trial, in addition to the testimony adduced at the suppression hearing, in determining the correctness of the trial court's pretrial ruling on a motion to suppress. State v. Leger, 05-0011 (La.7/10/06), 936 So.2d 108, 122, cert. denied, 549 U.S. 1221, 127 S.Ct. 1279, 167 L.Ed.2d 100 (2007).

. Blockburger v. United States, 284 U.S. 299, 52 S.Ct. 180, 76 L.Ed. 306.

. Compare State v. Papillion, 10-1317 (La.App. 3 Cir. 5/4/11), 63 So.3d 414, writ denied, 11-1149 (La.11/18/11), 75 So.3d 447. In Papillion, after applying the Blockburger test, the Third Circuit concluded that the defendant’s convictions for attempted disarming a peace officer and simple battery did not constitute double jeopardy. The court reasoned that simple battery required proof of the use of force upon another person, while disarming of a peace officer did not require proof of the use of force upon another person but instead required the use or threat of force in taking possession of a firearm from a peace officer's person or an area within the peace officer's immediate control, without the peace officer’s consent. Thus, the court held that the offenses required proof of an additional fact or act which the other did not.

. It is noted that the Louisiana Supreme Court has held that “a habitual offender hearing should not be considered part of the record for purposes of error patent review and that a defendant must assign as error "any perceived defect in the proceedings to preserve appellate review of the claimed error.” State v. Moore, 12-0102 (La.5/25/12), 90 So.3d 384, 385 (per curiam).