JAMES F. McKAY III, Judge.
I,STATEMENT OF CASE
On November 30, 2009, the State filed a bill of information charging the defendant with one count of armed robbery and two counts of attempted armed robbery. The defendant pled not guilty at arraignment. On April 26, 2010, a hearing was commenced on defense motions. The hearing resumed on August 31, 2010. The trial court denied the motion to suppress the identification and found probable cause.
Trial commenced on August 31, 2010, after the hearing on defense motions was complete. The jury found the defendant guilty as charged on all counts.
On September 24, 2011, the trial court sentenced the defendant. As to the conviction for armed robbery in count one, the defendant was sentenced to fifty years at hard labor without benefit of probation, parole, or suspension of sentence. As to the two attempted armed robberies, the court sentenced the defendant to twenty-four years imprisonment without benefit of probation, parole, or suspension of sentence.
A multiple bill hearing was conducted on November 29, 2011, after which, the defendant was found to be a second felony offender. The court vacated the | ^previously imposed sentenced on count one and re-sentenced the defendant to fifty years at hard labor without benefit of probation, parole, or suspension of sentence. The court denied the defendant’s motion to reconsider sentence and granted the motion for appeal.
STATEMENT OF FACT
On August 15, 2009, Adrian Maldonado, his brother, Aníbal Maldonado, their friend Wilson Vargas, and two friends, were eating and relaxing in the backyard of the Maldonado’s apartment building in the 3000 block of Cherry Street, in New Orleans, Louisiana. Wilson Vargas stepped into the front yard to make a phone call. He noticed a green Ford SUV drive past and turn on Colapissa Street, a half block away. Shortly thereafter, three men approached Mr. Vargas. Two had bandanas covering their faces, one did not. Vargas issued a friendly greeting, but the men pulled guns out.
The men grabbed Vargas, hit him several times, and demanded his money, but Vargas had no money or other valuables on his person. Holding him by the shirt, the men dragged Vargas into the backyard. The man without a handkerchief covering his face grabbed Adrian Maldonado and struck him in his ribs and face. He turned him around, threw him to the ground, searched his pockets, and took everything he had, including his wallet, which contained five hundred dollars. The other men had Vargas on the ground and were searching him. After the robbery, the men ran.
When Aníbal Maldonado and the others saw the armed men dragging Wilson Vargas into the backyard they took off running. Aníbal Maldonado crossed through *605 a few yards and jumped some fences. As he neared the street, he saw the green Ford SUV stopped on the street with one person sitting inside and ^sensed danger. He stopped short before reaching the street. Then he saw the three men running towards the vehicle. The man who did not have a handkerchief covering his face entered the vehicle on the side closest to where Aníbal Maldonado was positioned.
After the robbery, the victims called the police, who arrived approximately forty-five minutes later. Detective Patrick Conaghan was assigned to investigate the robbery. The day after the robbery, Detective Conaghan took the victims to the Second District Station for the purpose of creating a composite sketch of the unmasked perpetrator. Officer Stephanie Taillon assisted in creating a composite sketch using a computer software program designed for that purpose for which she was trained. Working with Officer Taillon, the victims manipulated various facial features on the computer until they created a composite sketch of the unmasked perpetrator. Once completed, they signed and dated the sketch. Officer Taillon then created a wanted bulletin with the sketch which was introduced at trial.
Sergeant Sean Ferguson, who supervises the robbery detectives in the Second District, saw the composite sketch and told Detective Conaghan that the sketch had a striking resemblance to Leroy Jackson, and he suggested that Detective Conaghan put him in a photographic lineup.
On August 20, 2009, Detective Conaghan traveled to the apartment building on Cherry Street and showed Wilson Vargas the lineup. After viewing the lineup, Mr. Vargas positively identified Leroy Jackson as the perpetrator. Two days later, Detective Conaghan met with Adrian Maldonado at his apartment. He presented the lineup to Mr. Maldonado, and he identified the defendant and then signed the rear of the lineup indicating his selection. On August 27, 2009, Detective Conaghan met with Aníbal Maldonado at the soccer field across from |4the house on Cherry Street. He placed the photo lineup face down on the trunk of his vehicle, and Mr. Maldonado identified the defendant and signed the back of the lineup indicating his selection.
After the jury retired to commence their deliberations, the trial court issued some comments for the record. The court noted that its comments were not directed at the guilt or innocence of the defendant but were directed at the overall deterioration of the system. Specifically, the court commented on Detective Conaghan’s failure to prepare three separate photo lineups with the defendant’s photograph placed in a different location rather than simply compiling one photo lineup for all three witnesses to view. The court considered the failure to do so unprofessional. The court also commented on the fact that a witness from the police department left the courthouse prior to testifying and on the fact that no photographs of the location where the robbery occurred were submitted.
ERRORS PATENT
A review of the record for errors patent reveals none.
ASSIGNMENT OF ERROR NUMBER 1
The defendant contends the trial court erred when it denied the motion to suppress the identification.
In State v. Thibodeaux, 1998-1673 (La.9/8/99) 750 So.2d 916 the Louisiana Supreme Court set out the relevant jurisprudence as follows:
As a general matter, the defendant has the burden of proof on a motion to suppress an out-of-court identification. La.Code Crim. Proc. art. 703(D). To *606 suppress an identification, a defendant must first prove that the identification procedure was suggestive. State v. Prudholm, 446 So.2d 729, 738 (La.1984). An identification procedure is suggestive if, during the procedure, the witness’ attention is unduly focused on the defendant. State v. Robinson, 386 So.2d 1374, 1377 (La.1980). However, even when suggestiveness of the identification process is proven by the defendant or presumed by the IfiCourt, the defendant must also show that there was a substantial likelihood of misidentification as a result of the identification procedure. State v. Prudholm, 446 So.2d at 738.
The Supreme Court held in Manson v. Brathwaite, 432 U.S. 98, 97 S.Ct. 2243, 2254, 53 L.Ed.2d 140 (1977), that despite the existence of a suggestive pretrial identification, an identification may be permissible if there does not exist a “very substantial likelihood of irreparable misidentification.” Under Manson, the factors which courts must examine to determine, from the totality of the circumstances, whether the suggestiveness presents a substantial likelihood of misidentification include: 1) the witness’ opportunity to view the criminal at the time of the crime; 2) the witness’ degree of attention; 3) the accuracy of his prior description of the criminal; 4) the level of certainty demonstrated at the confrontation; and 5) the time between the crime and the confrontation. Id.
State v. Thibodeaux, pp. 20-21, 750 So.2d at 932.
In support of defendant’s claim that the trial court erred in failing to suppress the identification, defendant references the trial court’s comments at the end of the trial relative to Detective Conaghan’s failure to create three separate photographic lineups. The defendant suggests that the trial court’s comments are evidence that the court found that the lineup was unduly suggestive.
Review of the trial court’s comments reflects simply that the court believed that it would have been more professional to have prepared three separate lineups and that by positioning the defendant’s photograph differently in each lineup, the chance that the victims would confer with each other regarding whom they identified would have been eliminated.
However, there is nothing from the testimony to suggest the victims identified the defendant for any reason other than because they believed he had committed the robbery. None of the victims suggested that they had spoken to each other regarding whom they identified. Adrian Maldonado testified that he did not speak to anyone about the identification procedure. Each of the victims | ^testified that the lineup was presented to him face up, and that he only turned the lineup over after he had made an identification.
Furthermore, the circumstances surrounding the robbery do not suggest that there was a likelihood of misidentification. From the testimony, it appears that the victims maintained a high degree of attention to the events as they unfolded. Indeed, it appears that the victims were acutely aware of their circumstances. All the victims testified that the lighting was very good.
At the motion to suppress the identification, Adrian Maldonado testified that the man without the handkerchief covering his face put his gun to his chest and told him not to look at him. Nevertheless, Mr. Maldonado testified that he was trying to look at his face the entire time. Aníbal Maldonado testified that when the perpetrators reached the Ford SUV, the defendant turned around to see if anyone was following them and that he could see his *607 face very well. He stated that that this area was quite well lighted.
Accordingly, the defendant’s assignment of error lacks merit.
ASSIGNMENT OF ERROR NUMBER 2
In this assignment of error, the defendant argues that he was prejudiced by a statement by the prosecutor during closing argument. The Code of Criminal Procedure provides that the scope of closing argument “shall be confined to evidence admitted, to the lack of evidence, to conclusions of fact that the state or defendant may draw therefrom, and to the law applicable to the case. The argument shall not appeal to prejudice. The state’s rebuttal shall be confined to answering the argument of the defendant.” La.C.Cr.P. art. 774.
17Also, La.C.Cr.P. art. 770 provides that a mistrial shall be ordered when a comment during argument refers directly or indirectly to “the failure of the defendant to testify in his own defense.”
However, a prosecutor retains “considerable latitude” when making closing arguments. State v. Taylor, 93-2201 (La.2/28/96), 669 So.2d 364. Furthermore, the trial judge has broad discretion in controlling the scope of closing arguments. State v. Casey, 99-0023 (La.1/26/00), 775 So.2d 1022.
Before an appellate court is permitted to reverse a conviction on the basis of improper argument, it must be convinced that the jury was influenced by the remarks to the extent that the statements contributed to the verdict. State v. Michel, 422 So.2d 1115 (La.1982).
The complained of statement made by the prosecutor is as follows:
... Now, the Defense attorney, he could have grilled them. He could have tried to crack them. He didn’t even talk about it. ‘Didn’t you tell them that it was number two?’ He never did. He didn’t even try.
The defendant objected to the statement on the basis that it impermissibly shifted the burden at trial. The objection was denied.
There was nothing about the comment which could be seen as a direct or indirect comment on the defendant’s failure to testify. It appears that in making the statement the prosecutor was either commenting on the strength of the identifications or answering an argument by defense counsel. Whatever the case, the comments by the prosecutor fall well within the permissible scope of La. C.Cr.P. art. 774. The defendant’s assignment of error lacks merit.
ASSIGNMENT OF ERROR NUMBER 3
In his third assignment of error, the defendant argues that his conviction by a non-unanimous jury was unconstitutional. La. Const, art. I, § 17 and La.C.Cr.P. 18art. 782(A) provide that in cases in which punishment is necessarily confinement at hard labor shall be tried by a jury composed of twelve jurors, ten of whom must concur to render a verdict.
The Louisiana Supreme Court and this Court have rejected the argument that a non-unanimous verdict violates the Fifth, Sixth, or Fourteenth Amendments to the Unites States Constitution on multiple occasions. State v. Bertrand, 2008-2215 (La.3/17/09), 6 So.3d 738; State v. Boudreaux, 2008-1504 (La.App. 4 Cir. 9/29/10), 48 So.3d 1144; State v. Barbour, 2009-1258 (La.App. 4 Cir. 3/24/10), 35 So.3d 1142, writ denied, 2010-0934 (La. 11/19/10), 49 So.3d 396, cert. denied., Barbour v. Louisiana, — U.S.—, 131 S.Ct. 1477, 179 L.Ed.2d 302 (2011).
Defendant’s assignment of error lacks merit.
*608 CONCLUSION
Based on the above and foregoing we affirm the defendant’s convictions and sentences.
AFFIRMED