# Supreme Court of Louisiana

The Opinions handed down on the **1st day of May, 2018**, are as follows:

**PER CURIAM**:

2016-KP-1100          STATE OF LOUISIANA v. LEROY JACKSON (Parish of Orleans)

The only real question here is whether counsel's deficient performance prejudiced defendant. We find it clear that it did. There are stark contrasts between the witnesses' descriptions of the robber's complexion, hair, height, and weight, and those characteristics of the defendant. Furthermore, the convictions rested solely on the witness identifications, which went virtually unchallenged at trial. The likelihood of a different result if that information had been used at trial in a case with no other evidence linking defendant to the crimes is more than conceivable; it is substantial. Therefore, we find it sufficient to undermine confidence in the outcome. We reverse the court of appeal and reinstate the district court's ruling that granted defendant a new trial. The matter is remanded to the district court for further proceedings.

REVERSED AND REMANDED.

WEIMER, J., concurs in the result.
GUIDRY, J., dissents and assigns reasons.
CLARK, J., dissents.
CRICHTON, J., additionally concurs and assigns reasons.

SUPREME COURT OF LOUISIANA

No. 2016-KP-1100

STATE OF LOUISIANA

VERSUS

LEROY JACKSON

ON WRIT OF CERTIORARI TO THE COURT OF APPEAL,
FOURTH CIRCUIT PARISH OF ORLEANS

PER CURIAM

Defendant was found guilty of armed robbery and two counts of attempted armed robbery based solely on his identification by the two victims, Adrian Maldonado and Wilson Vargas, and an eyewitness to the crimes, Anibal Maldonado. The offenses were committed on August 15, 2009, by three armed men. Two of the men wore masks. Defendant was identified as the unmasked man after the witnesses collaborated with an officer to make a computerized composite of a dark-skinned man with short hair and a distinctive hairline. A detective proposed placing defendant in a photographic lineup based on the composite. The three witnesses then each identified defendant from a photographic lineup.

The two victims expressed uncertainty, however, in their identifications to a defense investigator. Vargas told the investigator that the unmasked man was light-skinned with a distinctive hairline,[1] and that he had picked out defendant from police photographs as a man who "looked a lot like the person who'd robbed

---

[1] Specifically, Vargas stated, "The third man was much lighter-skinned than the other two and also had short hair. I also remember that the light-skinned black man had a very distinctive hairline because it was very long, all down the sides of his face."

[him]." When asked to express his certainty in the identification on a scale of one to ten, Vargas chose a five. Adrian Maldonado described the unmasked man as light-skinned with short hair, and expressed his confidence on the ten-point scale as a five. In addition, Adrian Maldonado stated that it was difficult to make an identification because "all black people look alike" to him.

Although the defense investigator provided these statements to defense counsel, he did not use them at trial. In addition, defendant's head was clean-shaven at the time of the crimes and had been since 2007, as evidenced by photographs and testimony presented at the evidentiary hearing.[2] Furthermore, the witnesses described the unmasked robber as standing approximately five feet nine inches tall and weighing approximately 180 pounds. According to the arrest register, defendant stands five feet seven inches tall and weighs 152 pounds. Nonetheless, counsel conceded at the evidentiary hearing that he did not use the discrepancies between the robber's complexion, hair, height, and weight, and his client, and counsel was unable to recall why he failed to use the witnesses' statements to undermine their identifications.

After defendant was found guilty by the jury, the district court sentenced him to 50 years imprisonment at hard labor as a second-felony offender for armed robbery, and two terms of 24 years imprisonment at hard labor for attempted armed robbery, with the sentences to run concurrently and without benefit of parole, probation, or suspension of sentence. The court of appeal affirmed. *State v. Jackson*, 10-1633 (La. App. 4 Cir. 10/12/11), 76 So.3d 602, *writ denied*, 11-2528 (La. 3/30/12), 85 So.3d 116.

Defendant timely sought relief on collateral review on the ground of

---

[2] A picture of defendant taken before 2007 was used in the photographic lineup. Additionally, defendant was the only individual in the lineup wearing a white sleeveless undershirt, as opposed to a short-sleeve shirt.

2

ineffective assistance of counsel. After conducting an evidentiary hearing, the district court granted defendant a new trial. In ruling, the district court emphasized the problematic nature of cross-racial identifications, and the strong indications here that the identifications were unreliable. A divided panel of the court of appeal granted the state's writ application and reinstated the convictions and sentences. The majority found that defendant had failed to carry his burden under *Strickland v. Washington*, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984) of showing that he was prejudiced by counsel's error. *State v. Jackson*, 15-1358 (La. App. 4 Cir. 5/16/16) (unpub'd). Judge Jenkins dissented, emphasizing that the identification testimony presented by the state was the "sole evidence linking defendant to the crimes," and that defense counsel possessed statements from the two victims, which "conflict[ed], and even contradict[ed], the original police report narrative, the supplemental police report, and the victims' testimony." *Id.*, 15-1358, p. 3 (Jenkins, J., dissenting). Therefore, the dissent would deny the state's writ application and leave the district court's order that granted defendant a new trial intact. We agree with Judge Jenkins.

"The Sixth Amendment, applicable to the States by the terms of the Fourteenth Amendment, provides that the accused shall have the assistance of counsel in all criminal prosecutions." *Missouri v. Frye*, 566 U.S. 134, 138, 132 S.Ct. 1399, 1404, 182 L.Ed.2d 379 (2012). The United States Supreme Court has long recognized that the right to counsel is the right to the effective assistance of counsel. *See McMann v. Richardson*, 397 U.S. 759, 771 n.14, 90 S.Ct. 1441, 1449, 25 L.Ed.2d 763 (1970) (citing *Reece v. Georgia*, 350 U.S. 85, 76 S.Ct. 167, 100 L.Ed. 77 (1955); *Glasser v. United States*, 315 U.S. 60, 62 S.Ct. 457, 86 L.Ed. 680 (1942); *Avery v. Alabama*, 308 U.S. 444, 60 S.Ct. 321, 84 L.Ed. 377 (1940); *Powell v. Alabama*, 287 U.S. 45, 53 S.Ct. 55, 77 L.Ed. 158 (1932)). Claims of

3

ineffective assistance of counsel are generally governed by the standard set forth by the Supreme Court in *Strickland v. Washington*, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984), and adopted by this Court in *State v. Washington*, 491 So.2d 1337, 1339 (La. 7/18/86).

To prevail on such a claim, a defendant must first show that "counsel's representation fell below an objective standard of reasonableness." *Strickland*, 466 U.S. at 687–88, 104 S.Ct. at 2064. The Supreme Court further noted that "[a]n error by counsel, even if professionally unreasonable, does not warrant setting aside the judgment of a criminal proceeding if the error has no effect on the judgment." *Id.*, 466 U.S. at 691, 104 S.Ct. at 2066. Additionally, the Court reasoned "[t]he purpose of the Sixth Amendment guarantee of counsel is to ensure that a defendant has the assistance necessary to justify reliance on the outcome of the proceeding. Accordingly, any deficiencies in counsel's performance must be prejudicial to the defense in order to constitute ineffective assistance under the Constitution." *Id.*, 466 U.S. at 691–92, 104 S.Ct. at 2067. Thus, the *Strickland* court held that the "defendant must [also] show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id.*, 466 U.S. at 694, 104 S.Ct. at 2066. The court further explained that in making a determination of ineffectiveness of counsel, "the ultimate focus of inquiry must be on the fundamental fairness of the proceeding whose result is being challenged. In every case the court should be concerned with whether, despite the strong presumption of reliability, the result of the particular proceeding is unreliable because of a breakdown in the adversarial process that our system counts on to produce just results." *Id.*, 466 U.S. at 696, 104 S.Ct. at 2053–54.

4

The state here suggests without evidence that the defense investigator may have pressured the witnesses to recant their identifications, mischaracterized what they said when transcribing it, or otherwise obstructed justice, State's brief at p. 12, and further speculates that counsel may have chosen not to use the information obtained by the investigator for that reason. Thus, the state, in essence, proposes that counsel might have acted strategically to conceal the investigator's misconduct rather than committed professional error. This conjecture does not merit serious consideration, and (if true) could provide further evidence of a failure in the representation. Instead, it seems clear counsel's representation fell below an objective standard of reasonableness. Counsel was provided with information that undermined the witness identifications, in a case that rested entirely on the witness identifications, but did not use it.

In addition, the state faults the district court for considering the strong indicia here that the identifications were unreliable, and further faults the court for seizing on the cross-racial nature of the identifications. Courts, however, have recognized that "centuries of experience in the administration of criminal justice have shown that convictions based solely on testimony that identifies a defendant previously unknown to the witness is highly suspect," and that, "[o]f all the various kinds of evidence[,] it is the least reliable, especially where unsupported by corroborating evidence." *See, e.g., Jackson v. Fogg*, 589 F.2d 108, 112 (2d Cir. 1978); *see also United States v. Wade*, 388 U.S. 218, 228, 87 S.Ct. 1926, 1933, 18 L.Ed.2d 1149 (1967) ("[T]he annals of criminal law are rife with instances of mistaken identification. [As] Mr. Justice Frankfurter once said: 'What is the worth of identification testimony even when uncontradicted? The identification of strangers is proverbially untrustworthy.'"). Scholars and judges alike have commented that the inherent risk of misidentification is generally exacerbated by

the compelling nature of eyewitness testimony: "there is almost nothing more convincing than a live human being who takes the stand, points a finger at the defendant, and says[,] 'That's the one!'" Elizabeth F. Loftus, *Eyewitness Testimony* 19 (1979). As Justice Brennan put it, "eyewitness identification evidence has a powerful impact on juries. Juries seem most receptive to, and not inclined to discredit, testimony of a witness who states that he saw the defendant commit the crime." *Watkins v. Sowders*, 449 U.S. 341, 352, 101 S.Ct. 654, 661, 66 L.Ed.2d 549 (1981) (Brennan, J., dissenting). Furthermore, cross-racial identifications have, in the words of the Fifth Circuit, been "demonstrated to be particularly unreliable." *Gonzales v. Thaler*, 643 F.3d 425, 432 (5th Cir. 2011).

The only real question here is whether counsel's deficient performance prejudiced defendant. We find it clear that it did. The United States Supreme Court instructed in *Harrington v. Richter*, 562 U.S. 86, 131 S.Ct. 770, 178 L.Ed.2d 624 (2011) as follows:

> In assessing prejudice under *Strickland*, the question is not whether a court can be certain counsel's performance had no effect on the outcome or whether it is possible a reasonable doubt might have been established if counsel acted differently. Instead, Strickland asks whether it is reasonably likely the result would have been different. This does not require a showing that counsel's actions more likely than not altered the outcome, but the difference between *Strickland*'s prejudice standard and a more-probable-than-not standard is slight and matters only in the rarest case. The likelihood of a different result must be substantial, not just conceivable.

*Richter*, 562 U.S. at 111–12, 131 S.Ct. at 791–92 (internal citations and quotation marks omitted). Here, there are stark contrasts between the witnesses' descriptions of the robber's complexion, hair, height, and weight, and those characteristics of the defendant. Furthermore, the convictions rested solely on the witness identifications, which went virtually unchallenged at trial. The likelihood of a different result if that information had been used at trial in a case with no other

6

evidence linking defendant to the crimes is more than conceivable; it is substantial. Therefore, we find it sufficient to undermine confidence in the outcome. We reverse the court of appeal and reinstate the district court's ruling that granted defendant a new trial. The matter is remanded to the district court for further proceedings.

**REVERSED AND REMANDED**

**SUPREME COURT OF LOUISIANA**

**No. 2016-KP-1100**

**STATE OF LOUISIANA**

**VERSUS**

**LEROY JACKSON**

ON WRIT OF CERTIORARI TO THE COURT OF APPEAL
FOURTH CIRCUIT, PARISH OF ORLEANS

**GUIDRY, Justice**, dissents and assigns reasons.

Under the standard for ineffective assistance of counsel set out in Strickland v. Washington, 466 U.S. 668, 104 S.Ct. 2052 (1984), adopted by this court in State v. Washington, 491 So.2d 1337, 1339 (La. 1986), a reviewing court must reverse a conviction if the defendant establishes his counsel's performance fell below an objective standard of reasonableness under prevailing professional norms, and the inadequate performance prejudiced defendant to the extent that the trial was rendered unfair and the verdict suspect. While defendant's trial counsel may have erred in failing to pursue at trial information provided earlier by the defense investigator, the defendant has failed to satisfy his burden of proving prejudice by any alleged error. As correctly noted by the court of appeal when it reversed the trial court's ruling granting the defendant a new trial, the record reveals each of the three robbery victims assisted the law enforcement sketch artist with the preparation of a composite sketch of the assailant. Each victim selected the defendant as his assailant in a photographic lineup. Moreover, each of the victims identified in open court the defendant as his assailant. In addition to the defendant's presence at trial, the composite sketch and photographic line-up were presented to the jury for their consideration of whether the victims' identifications were reasonable under the given facts. For these reasons, I

would affirm the ruling of the court of appeal.

05/01/18

**SUPREME COURT OF LOUISIANA**

**No. 2016-KP-1100**

**STATE OF LOUISIANA**

**VERSUS**

**LEROY JACKSON**

**ON WRIT OF CERTIORARI TO THE COURT OF APPEAL,
FOURTH CIRCUIT, PARISH OF ORLEANS**

**Crichton, J.**, additionally concurs and assigns reasons.

I agree with the majority opinion, and write separately only to note that this case presents unique facts that led to unreliable identifications made by the victim eyewitnesses. However, the case should not be interpreted to corrode the value of eyewitness testimony as competent direct evidence in Louisiana.