CHAISSON, J.
Defendant, Tyronne[1] Perry, appeals his convictions and sentences for possession of a firearm by a convicted felon and battery of a police officer. Defendant's appointed appellate counsel has filed a brief which challenges the trial court's denial of defendant's motion to suppress the evidence, the trial court's decision to allow defendant to represent himself, the trial court's denial of defendant's challenges for cause as to certain jurors, and the trial court's imposition of a fifteen-year sentence on defendant as a result of his conviction for possession of a firearm by a conviction felon. In addition, defendant has filed a pro se brief which raises issues relating to the trial court's refusal to remove George Vedros as his appointed public defender, the sufficiency of the evidence used to convict him of possession of a firearm by a convicted felon, and the trial court's failure to recognize defendant's *1187 right to defend himself against being attacked.
Finding no merit to the arguments advanced by either defendant or his appointed appellate counsel, we affirm defendant's convictions and the sentence imposed for his possession of a firearm by a convicted felon conviction. However, because of an error patent noted herein, we vacate defendant's sentence on the battery of a police officer conviction and remand the matter for resentencing in accordance with this opinion.
PROCEDURAL HISTORY
On June 23, 2016, the Jefferson Parish District Attorney filed a bill of information charging defendant with possession of a firearm by a convicted felon, in violation of La. R.S. 14:95.1 (count one), possession with intent to distribute cocaine, in violation of La. R.S. 40:967(A) (count two), and battery of a police officer producing an injury that required medical attention, in violation of La. R.S. 14:34.2 (count three). Defendant pled not guilty at his arraignment. On January 9, 2017, the trial court heard and denied defendant's motion to suppress the evidence.
Defendant, representing himself, proceeded to trial before a twelve-person jury on March 21 and 22, 2017. After considering the evidence presented, the jury found defendant guilty as charged on counts one and three and not guilty on count two. On March 29, 2017, the trial judge sentenced defendant to imprisonment for fifteen years without benefit of parole, probation, or suspension of sentence on count one and imprisonment at hard labor for three years on count three, to run concurrently. The trial judge also ordered defendant to pay a fine of one thousand dollars in connection with count one. Defendant now appeals.
FACTS
At approximately 1:05 a.m. on June 1, 2016, Officer Vincente Paz of the Gretna Police Department was dispatched to a disturbance call at an apartment complex located in the 1400 block of Palfrey Street in Gretna. As he approached the area in his marked police car, Officer Paz noticed a black Nissan Titan truck, with its tail lights on, approximately a quarter of a block away from the complex on the right side of the road. Officer Paz passed and pulled up in front of the truck. As he exited his unit, Officer Paz observed the truck roll backwards and hit the vehicle, an Envoy, parked behind it. The Titan then moved forward in an apparent attempt to leave, prompting Officer Paz to approach the truck and shine his flashlight through the windshield to illuminate the inside of the vehicle and to signal the driver to stop. When he did so, he saw a man, later identified as defendant, "kind of reaching down." Defendant thereafter stopped, exited his truck, and walked towards the back of his vehicle to check out the damage.
Officer Paz started asking defendant questions in an attempt to gather information about the accident and to determine if he knew the identity of the owner of the other vehicle. After Officer Paz asked defendant what he was doing in the area, defendant became nervous, started physically shaking, avoided eye contact, and slurred his words. Defendant then walked back to his vehicle and attempted to leave. Despite the officer's directive not to leave, defendant tried to open the door of his vehicle. At that point, Officer Paz grabbed defendant by his right wrist. Defendant then pulled away from him violently and took a "fighting stance." As Officer Paz attempted to again grab defendant's wrist to handcuff him, defendant jerked away, punched him in the face, and fled northbound on Palfrey Street. Although the officer *1188 was disoriented from the punch, he managed to call for assistance and chase after defendant.
As defendant ran, Officer Brad Cheramie, who had also responded to the initial disturbance call and had seen defendant punch Officer Paz, pulled out his baton and struck defendant in the leg. Officer Paz then tackled defendant from the rear, and defendant fell to the ground, at which point a physical struggle ensued. Officer Cheramie and Officer Jason Dufrene, who was also on the scene and had observed defendant hit Officer Paz, joined in the struggle to try to handcuff defendant. As the officers tried to stabilize defendant's right hand, Officer Cheramie observed defendant reach with his left hand into his pocket, grab a clear plastic bag containing a white rock-like substance, and toss it backwards in the direction of the patrol unit. Defendant eventually quit struggling and complied with Officer Paz's command to put his hands behind his back. The officers then handcuffed defendant and conducted a pat down but did not feel any weapons on him. They escorted defendant to the patrol car and conducted a search incident to arrest, which resulted in the recovery of eighty-four dollars and a cell phone.
Once defendant was secured in the patrol car, Officer Cheramie advised Officer Paz of his observations regarding the bag that was tossed during the struggle. The officers went to the area, retrieved the bag, and discovered that it contained forty-nine smaller, clear plastic bags filled with off-white rock-like substances, which tested positive for cocaine.
Thereafter, Officer Corey Newbie of the Gretna Police Department arrived with his dog and conducted a "free air sniff" of defendant's vehicle. As they approached the driver's side door handle area, the dog gave a "passive indication" of a narcotics odor. Officer Newbie then placed the dog inside the vehicle, and the dog kept going back to the driver's seat. A subsequent search of the vehicle resulted in the recovery of a gun from underneath the driver's seat. As a result of this incident, defendant was charged with various offenses, including battery on a police officer, possession with intent to distribute cocaine, and possession of a firearm by a convicted felon.
COUNSELED ASSIGNMENTS OF ERROR
Denial of Motion to Suppress (Assignment of Error Number One)
In his first assigned error, defendant challenges the trial court's denial of his motion to suppress the firearm found in his vehicle during a warrantless search.
At the January 9, 2017 suppression hearing, Officer Paz was the only witness to testify. His testimony at the suppression hearing was basically consistent with his trial testimony that on June 1, 2016, while responding to a disturbance at an apartment complex, he observed a Titan truck crash into the vehicle parked behind it.[2] He exited his vehicle, which he had parked in front of the Titan, and shined his flashlight into the truck to signal defendant, the driver, to stop "because he began pulling forward getting ready to leave." Defendant then exited his vehicle, and as Officer Paz was speaking to defendant about the accident, defendant attempted to leave, at which point Officer Paz grabbed defendant by his right wrist. When defendant pulled away, Officer Paz attempted to grab defendant's *1189 wrist again, and in response, defendant struck him in the face and fled.
Officer Paz pursued defendant, and with the assistance of other officers who were in the area in response to the initial disturbance call, was eventually able to subdue defendant after a physical struggle. At some point, Officer Paz was alerted by Officer Cheramie that defendant had dropped a bag, which was subsequently recovered and found to contain multiple smaller clear plastic baggies filled with off-white rock-like substances. A test of the items on the scene proved positive for the presence of cocaine. Thereafter, Officer Newbie, a K-9 handler, was called to the scene with his dog, who sniffed the vehicle and alerted to the presence of narcotics. During a subsequent search of defendant's truck, which occurred after defendant was restrained in handcuffs, a firearm was recovered from under the front driver's seat. No other contraband was found in the vehicle; however, a cell phone and eighty-four dollars were recovered from his person.
After considering the evidence presented and the arguments of counsel, the trial court denied the motion to suppress the firearm and narcotics, finding that the officers had probable cause to search the vehicle. The trial court reasoned, in part, as follows:
The officers certainly had probable cause, without the K-9 sniff, to search that vehicle after the Defendant punched the officer in the face, discarded narcotics and ran from the vehicle. Clearly they had probable cause to search the vehicle at that point, but they also had the K-9 sniff, which also gave them probable cause to search that vehicle.
Defendant now contends that the trial court erred in denying his motion to suppress the firearm. He contends that the search of his vehicle without a warrant was illegal because it did not fall within an exception to the warrant requirement and violated Arizona v. Gant , 556 U.S. 332, 129 S.Ct. 1710, 173 L.Ed.2d 485 (2009), as a search incident to an arrest. Defendant asserts that at the time his vehicle was searched, he was handcuffed and seated in the back seat of the patrol car. He also asserts that given that he was initially arrested for hit and run and battery of an officer and given that the officers' story that he discarded narcotics while being held in a neck restraint was not credible, it was unreasonable to believe the vehicle contained evidence of the offense of the arrest. Defendant further argues that the record is void of any exigent circumstances justifying an immediate warrantless search of his vehicle. We find no merit to these arguments.
The Fourth Amendment to the United States Constitution and Article I, § 5 of the Louisiana Constitution prohibit unreasonable searches and seizures. If evidence is derived from an unreasonable search or seizure, the proper remedy is exclusion of the evidence from trial. Warrantless searches and seizures are per se unreasonable unless justified by one of the exceptions to the warrant requirement. State v. Leonard , 06-361 (La. App. 5 Cir. 10/31/06), 945 So.2d 764, 765.
When the constitutionality of a warrantless search or seizure is placed at issue by a motion to suppress the evidence, the State bears the burden of proving that the search and seizure was justified pursuant to one of the exceptions to the warrant requirement. La. C.Cr.P. art. 703(D) ; State v. Joseph , 02-717 (La. App. 5 Cir. 6/27/03), 850 So.2d 1049, 1052, writ denied , 04-2404 (La. 6/17/05), 904 So.2d 686. The trial court's decision to deny a motion to suppress is afforded great weight and will not be set aside unless the preponderance of the evidence clearly favors suppression. In *1190 determining whether the trial court's ruling on a motion to suppress is correct, an appellate court is not limited to the evidence presented at the motion to suppress hearing but also may consider pertinent evidence presented at trial. State v. Sam , 11-469 (La. App. 5 Cir. 2/14/12), 88 So.3d 580, 586, writ denied , 12-631 (La. 9/12/12), 98 So.3d 301.
In Pennsylvania v. Labron , 518 U.S. 938, 940, 116 S.Ct. 2485, 2487, 135 L.Ed.2d 1031 (1996) (per curiam ), the United States Supreme Court held that if a car is readily mobile and probable cause exists to believe it contains contraband, the Fourth Amendment permits the police to search the vehicle. In Maryland v. Dyson , 527 U.S. 465, 466-67, 119 S.Ct. 2013, 2014, 144 L.Ed.2d 442 (1999) (per curiam ), the Supreme Court explained that the automobile exception has no separate exigency requirement. This Court has also recognized that the automobile exception "does not have an independent exigency requirement and if probable cause exists for the search of the vehicle that is sufficient. The exigency is supplied by the inherent mobility of the vehicle and the citizen's lesser expectation of privacy." State v. Joseph , 850 So.2d at 1054.
In addition, the Louisiana Supreme Court has recognized that there is no constitutional distinction between seizing and holding a car before presenting the probable cause issue to a magistrate and immediately searching the vehicle without a warrant. Given probable cause to search, either course is reasonable under the Fourth Amendment and the Louisiana Constitution. State v. Tatum , 466 So.2d 29, 31 (La. 1985).
Probable cause means "a fair probability that contraband ... will be found." Illinois v. Gates , 462 U.S. 213, 238, 103 S.Ct. 2317, 2332, 76 L.Ed.2d 527 (1983). Whether probable cause exists must be judged by the probabilities and practical considerations of everyday life on which average people, and particularly average police officers, can be expected to act. State v. Jones , 09-688 (La. App. 5 Cir. 2/9/10), 33 So.3d 306, 317, writ denied , 11-1301 (La. 3/2/12), 83 So.3d 1042. In State v. Gant , 93-2895 (La. 5/20/94), 637 So.2d 396, 397 (per curiam ), the Louisiana Supreme Court found that the officers had probable cause to search the vehicle after a drug-certified dog alerted on the trunk of the vehicle.
In the instant case, the evidence presented at trial and at the suppression hearing reflected that prior to the search, defendant struck another vehicle, attempted to leave the scene of the accident, punched an officer in the face, resisted arrest by violently struggling with the officers, and discarded narcotics during the struggle. Moreover, a narcotics detection dog alerted on the vehicle. Given these circumstances, the officers clearly had probable cause to believe that the vehicle contained evidence of criminal activity, and thus, they were justified in searching defendant's vehicle pursuant to the automobile exception to the warrant requirement.[3] Accordingly, we find that the trial court did not err in denying defendant's motion to suppress the firearm.
Self-Representation (Assignment of Error Number Two)
On appeal, defendant asserts that the trial judge erred in allowing him to represent himself. He contends that although a cursory review of the record suggests that the trial judge complied with *1191 the necessary requirements to determine that defendant made a knowing and intelligent waiver of his right to counsel, a closer review indicates that he was not sufficiently informed of the dangers of self-representation in order to make a knowing and intelligent waiver.
The Sixth Amendment to the United States Constitution and Article I, § 13 of the Louisiana Constitution give a defendant the right to counsel as well as the right to defend himself. A defendant may represent himself only if he makes an unequivocal request to represent himself and knowingly and intelligently waives his right to counsel. Faretta v. California , 422 U.S. 806, 95 S.Ct. 2525, 45 L.Ed.2d 562 (1975) ; State v. Bruce , 03-918 (La. App. 5 Cir. 12/30/03), 864 So.2d 854, 857.
In accepting a waiver of counsel, the trial court should advise the defendant of the nature of the charges, the penalty range for the charges, and the dangers and disadvantages of self-representation, such as the failure to recognize objections to inadmissible evidence and the inability to adhere to technical rules governing trials. In addition, the court should inquire into the defendant's age, education, and mental condition and should determine according to the totality of circumstances whether the accused understands the significance of the waiver. Bruce , 864 So.2d at 857.
Whether a defendant has knowingly, intelligently, and unequivocally asserted the right to self-representation must be determined on a case-by-case basis considering the facts and circumstances of each case. State v. Leger , 05-11 (La. 7/10/06), 936 So.2d 108, 147-48, cert. denied , 549 U.S. 1221, 127 S.Ct. 1279, 167 L.Ed.2d 100 (2007). The trial court is given much discretion in determining whether the defendant's waiver was knowing and intelligent. An appellate court should not reverse the trial court ruling absent an abuse of its discretion. State v. LaGarde , 07-288 (La. App. 5 Cir. 10/30/07), 970 So.2d 1111, 1120, writs denied , 07-1650 (La. 5/9/08), 980 So.2d 684 and 07-2412 (La. 5/16/08), 980 So.2d 706.
In the present case, the record reflects that the trial judge conducted a thorough colloquy with defendant before granting his unequivocal request to represent himself at trial. Particularly, on March 20, 2017, after defendant expressed his desire to represent himself, the trial judge ascertained that he was forty-one years old, that he received his GED, and that he could read and write the English language. Defendant further advised the trial court that he was not being treated for any medical or mental issues and that he was not currently taking any medications. When the trial judge asked defendant if he had been diagnosed or treated for any mental conditions in the past, defendant responded that he previously had a "bout" with depression. In response to further questioning by the trial court, defendant stated that he understood that he had a right to have counsel appointed to represent him at no cost if he could not afford it and that he had the right to retain counsel of his choice if he could afford to do so.
The trial judge also explained to defendant and ascertained that he understood the nature of the charges against him, the sentencing ranges, and his possible multiple offender status and enhanced sentencing exposure based on his prior convictions. The parties then had a discussion about the plea deal offered to defendant by the State, after which defendant indicated that he understood and rejected the plea deal.
The trial judge thereafter thoroughly advised defendant of the dangers and disadvantages of self-representation. Defendant indicated that he understood that a trained attorney probably possessed more *1192 skill and knowledge than he did in representing him on these charges; that an experienced attorney was likely more familiar with the motions that needed to be filed, the time limits for filing them, the procedure to subpoena witnesses, and the objections to make; that if he represented himself, he would be responsible for his own defense, preparing his own case, and calling his own witnesses; and that the trial judge could not assist him in trying his case. Defendant further indicated that he understood that he would be tasked with knowing the legal rules and procedures that apply despite having received no formal legal training and that the trial judge was going to hold him accountable like he would any other lawyer. After thoroughly explaining all the dangers and disadvantages of self-representation, the trial court asked defendant if he still desired to waive his right to counsel and represent himself. Defendant answered affirmatively and was thereafter allowed to represent himself at trial.[4]
Our review of the extensive colloquy between the trial court and defendant reflects that defendant was thoroughly advised of the dangers of self-representation, that he understood those dangers, and that he nonetheless wished to represent himself. Thus, we find no merit to appellate counsel's argument that defendant was not sufficiently informed of the dangers of self-representation in order to make a knowing and intelligent waiver. To support her argument that defendant did not understand the dangers of self-representation, appointed appellate counsel focuses on voir dire and points out defendant had difficulty exercising his challenges for cause and explaining the basis for those challenges and at times was unable to clearly identify which juror he wished to challenge because he could not see the jurors from where he was positioned.
Despite these complaints, the record indicates that defendant adequately represented himself during jury selection, that he was allowed to stand at the podium directly in the center or sit or stand at the defense table, as any attorney would have been able to do, and that he was able to question the potential jurors, utilize his peremptory challenges, and argue for and object to challenges for cause. Further, the question of whether a defendant properly waived his right to counsel should not be judged on what happened subsequent to the waiver of counsel; rather, it is the record made in waiving the right to counsel that is determinative of whether this right was properly waived. State v. George , 98-1149 (La. App. 5 Cir. 3/30/99), 743 So.2d 685, 689.
As part of this assigned error relating to the propriety of defendant's self-representation, appellate counsel also argues that the trial judge did not fully investigate whether defendant's history of mental illness could affect his ability to knowingly and intelligently waive his right to counsel. The record does not support this assertion.
At the hearing on March 20, 2017, the trial court, prior to accepting defendant's waiver of counsel, inquired about his mental condition. In response to questioning by the trial court, defendant indicated that he was not being treated for any medical or mental issues and that he was not currently on medications. Also, when the trial judge asked defendant if he had been diagnosed or treated for any mental conditions in the past, defendant responded that he "had a bout with depression, but that's pretty much it." We further note that the *1193 trial court again addressed defendant's mental condition during trial. In particular, on the second day of trial, Mr. Vedros advised the trial judge that defendant's sister and two aunts told him that defendant had "some mental illness" in the past and that they did not know whether that affected defendant's ability to represent himself. The trial court addressed this issue with defendant and Mr. Vedros and concluded as follows:
All right. The court had the colloquy with Mr. Perry. I've had many interactions with Mr. Perry and Mr. Perry does not appear to suffer from any mental illnesses. The only mental illness that he suggested was depression, which I don't even know if depression is in the DSM or not, but again, I don't find any concern whatsoever that Mr. Perry does not know what he is doing. Mr. Perry is able to follow instructions very easily, he understands what's going on here today. Again, the court has no concern with what's going on here.
Based on the foregoing, we find no merit to appellate counsel's argument that the trial judge did not fully investigate whether defendant's history of mental illness could affect his ability to knowingly and intelligently waive his right to counsel. We particularly note that the trial judge had ample opportunity to consider defendant's mental capacity based on his lengthy interactions with him during his numerous appearances in court. The record does not indicate that there was any objective information which should have alerted the court to the possibility that defendant could not understand the proceedings, appreciate the significance of the proceedings, or rationally represent himself. During the trial, defendant participated in jury selection, advised the trial judge of the witnesses he wished to call, cross-examined the State's witnesses, called witnesses, engaged in direct examination of those witnesses, lodged objections, argued for the removal of some jury instructions, and made a closing argument. Through his efforts, defendant was able to secure a not guilty verdict on count two.
In sum, we conclude that defendant made a clear and unequivocal request to represent himself and that he knowingly and intelligently waived his right to counsel. Accordingly, we find no abuse of discretion in the trial court's decision to accept defendant's waiver of his right to counsel and to allow defendant to represent himself at trial.
Denial of Challenges for Cause (Assignment of Error Number Three)
In this assigned error, defendant contends that the trial court erred in denying his challenges for cause as to certain jurors who had connections to law enforcement. Specifically, defendant contends that potential jurors Wesley Morvant and Leander Bourgeois should have been excused for cause because they had friends in the Gretna Police Department and that Russell Easley should have been excused for cause because he was a former police officer who participated in drug arrests.
La. C.Cr.P. art. 800(A) provides as follows:
A defendant may not assign as error a ruling refusing to sustain a challenge for cause made by him, unless an objection thereto is made at the time of the ruling. The nature of the objection and grounds therefor shall be stated at the time of objection.
In the present case, defendant failed to object to the trial court's denial of his challenges for cause, and thus, he has failed to preserve this issue for appellate review. See State v. Seals , 09-1089 (La. App. 5 Cir. 12/29/11), 83 So.3d 285, 317 n.65, writ denied , 12-293 (La. 10/26/12), 99 So.3d 53, cert. denied , 569 U.S. 1031, 133 S.Ct. 2796, 186 L.Ed.2d 863 (2013).
*1194 Defendant acknowledges that he did not object to the denial of the challenges for cause; however, he maintains that since the trial court's denial of these challenges affected his substantial rights because he was forced to use three peremptory challenges, this Court is not precluded from considering this assignment. While we do not necessarily agree with this argument, we nonetheless note that even if defendant had properly preserved this issue for appellate review, he would not be entitled to relief.
La. C.Cr.P. art. 797, which sets forth the grounds for challenges for cause, provides that a juror may be challenged for cause on the basis that the "juror is not impartial, whatever the cause of his partiality." A prospective juror's seemingly prejudicial response is not grounds for an automatic challenge for cause, and a district judge's refusal to excuse him on the grounds that he is not impartial is not an abuse of discretion, if, after further questioning, the potential juror demonstrates a willingness and ability to decide the case impartially according to the law and evidence. A challenge for cause should be granted, however, even when a prospective juror declares his ability to remain impartial, if the juror's responses as a whole reveal facts from which bias, prejudice, or inability to render a judgment according to law may be reasonably implied. State v. Mazique , 09-845 (La. App. 5 Cir. 4/27/10), 40 So.3d 224, 236-37, writ denied , 10-1198 (La. 12/17/10), 51 So.3d 19. A trial court is given broad discretion in ruling on challenges for cause, and such rulings will only be reversed when a review of the entire voir dire reveals that the judge's exercise of discretion was arbitrary and unreasonable with resultant prejudice to the accused. State v. Munson , 12-327 (La. App. 5 Cir. 4/10/13), 115 So.3d 6, 12, writ denied , 13-1083 (La. 11/22/13), 126 So.3d 476.
In the present case, we find no abuse of discretion in the trial court's denial of defendant's challenges for cause as to prospective jurors Mr. Morvant, Mr. Bourgeois, and Mr. Easley. During voir dire questioning, Mr. Morvant indicated that he had friends and family in law enforcement, including the Gretna Police Department;[5] however, he maintained that he did not recognize any of the names of the Gretna police officers that might be called to testify. More importantly, Mr. Morvant indicated that despite these associations, he could be fair and impartial to both the State and the defense. Likewise, during voir dire questioning, Mr. Bourgeois stated that he had friends and family in various law enforcement agencies, including the Gretna Police Department. However, Mr. Bourgeois asserted that these associations did not bias or prejudice him and that he would be fair and impartial. With regard to Mr. Easley, he stated during voir dire that he was a reserve deputy in Jefferson Parish, that he had multiple friends in law enforcement in Jefferson Parish, and that he had participated in drug arrests. Mr. Easley maintained however that he could be fair, impartial, and unbiased. Further, the prospective jurors' responses as a whole do not reveal facts from which bias, prejudice, or inability to render judgment according to law may be reasonably implied.
Accordingly, even if properly preserved for appellate review, the arguments raised *1195 by defendant in this assigned error lack merit.
Excessive Sentence (Assignment of Error Number Four)
In his final counseled assigned error, defendant argues that the fifteen-year sentence imposed for his conviction of possession of a firearm by a convicted felon is excessive. At the time of the offense in the instant case, La. R.S. 14:95.1(B) provided for a sentencing range of imprisonment at hard labor for not less than ten nor more than twenty years without benefit of probation, parole, or suspension of sentence and a fine of not less than one thousand dollars nor more than five thousand dollars. The trial court sentenced defendant to a mid-range sentence of fifteen years imprisonment without benefit of probation, parole, or suspension of sentence and imposed the minimum fine of one thousand dollars. Defendant now complains that the fifteen-year sentence is excessive.[6]
The Eighth Amendment to the United States Constitution and Article I, § 20 of the Louisiana Constitution prohibit the imposition of excessive punishment. Although a sentence is within statutory limits, it can be reviewed for constitutional excessiveness. A sentence is considered excessive if it is grossly disproportionate to the offense or imposes needless and purposeless pain and suffering. State v. Smith , 01-2574 (La. 1/14/03), 839 So.2d 1, 4. A sentence is grossly disproportionate if, when the crime and punishment are considered in light of the harm done to society, it shocks the sense of justice. State v. Lawson , 04-334 (La. App. 5 Cir. 9/28/04), 885 So.2d 618, 622, writ denied , 05-244 (La. 12/9/05), 916 So.2d 1048.
A trial judge has broad discretion when imposing a sentence and a reviewing court may not set a sentence aside absent a manifest abuse of discretion. The issue on appeal is whether the trial court abused its discretion, not whether another sentence might have been more appropriate. State v. Dorsey , 07-67 (La. App. 5 Cir. 5/29/07), 960 So.2d 1127, 1130, writ denied , 08-1649 (La. 4/17/09), 6 So.3d 786. The appellate court shall not set aside a sentence for excessiveness if the record supports the sentence imposed. In reviewing a trial court's sentencing discretion, three factors are considered: 1) the nature of the crime; 2) the nature and background of the offender; and 3) the sentence imposed for similar crimes by the same court and other courts. State v. Pearson , 07-332 (La. App. 5 Cir. 12/27/07), 975 So.2d 646, 656.
Looking at these factors, we find no abuse of the trial court's sentencing discretion in imposing a fifteen-year sentence on defendant for his possession of a firearm by a convicted felon conviction. In the instant case, the evidence at trial established that defendant struck a vehicle, after which he punched an officer in the face causing injury, attempted to run from the scene and the officers, violently struggled with the police, reached into his pocket and threw out narcotics, and had a firearm in his vehicle. Additionally, as noted by the State and considered by the trial court at the sentencing hearing, defendant had an extensive criminal history, which included convictions for negligent homicide, possession with intent to distribute narcotics, and possession of a firearm by a convicted felon.
Moreover, Louisiana courts have upheld similar sentences imposed on defendants convicted of possession of a firearm by a *1196 convicted felon. In particular, we note that this Court has consistently upheld fifteen-year sentences for violations of La. R.S. 14:95.1. See State v. Wilson , 09-170 (La. App. 5 Cir. 11/10/09), 28 So.3d 394, 401-02, writ denied , 09-2699 (La. 6/4/10), 38 So.3d 299 ; State v. James , 13-666 (La. App. 5 Cir. 2/12/14), 136 So.3d 113, 117-18 ; State v. Warmack , 07-311 (La. App. 5 Cir. 11/27/07), 973 So.2d 104, 109 ; and State v. Caffrey , 08-717 (La. App. 5 Cir. 5/12/09), 15 So.3d 198, 204-05, writ denied , 09-1305 (La. 2/5/10), 27 So.3d 297.
Accordingly, we find no abuse of the trial court's sentencing discretion under the circumstances presented herein.
PRO SE ASSIGNMENTS OF ERROR
Removal of Appointed Attorney (Pro Se Assignment of Error Number One)
In his pro se brief, defendant first complains that the trial court erred in refusing to remove Mr. Vedros as his attorney and supply defendant with a different public defender after defendant complained about Mr. Vedros' inadequate representation. We first note that if a defendant is indigent, he has the right to court-appointed counsel. An indigent defendant does not, however, have the right to have a particular attorney appointed to represent him. State v. Simmons , 13-258 (La. App. 5 Cir. 2/26/14), 136 So.3d 358, 371, writ denied , 14-674 (La. 10/31/14), 152 So.3d 151. Further, pursuant to defendant's request to represent himself, Mr. Vedros was removed as counsel of record prior to the beginning of trial and merely served as "shadow counsel" in the event defendant needed advice on legal issues.
With regard to defendant's allegations of ineffective assistance of counsel by Mr. Vedros during pre-trial proceedings, we note that generally claims of ineffective assistance of counsel are more appropriately raised in an application for post-conviction relief in the trial court, where a full evidentiary hearing can be conducted, rather than by direct appeal. State v. Jones , 13-99 (La. App. 5 Cir. 8/27/13), 123 So.3d 758, 765. However, when the record contains sufficient evidence to rule on the merits of the claim and the issue is properly raised in an assignment of error on appeal, it may be addressed in the interest of judicial economy. Where the record does not contain sufficient evidence to fully explore a claim of ineffective assistance of counsel, the claim should be relegated to post-conviction proceedings under La. C.Cr.P. arts. 924 - 930.8. State v. Taylor , 04-346 (La. App. 5 Cir. 10/26/04), 887 So.2d 589, 595.
In State v. Simmons , 136 So.3d at 369-70, the defendant argued in a pro se brief that his counsel's pre-trial representation was ineffective, complaining that he was forced to author his own defense even before he was allowed to proceed pro se because defense counsel never discussed a defense with him. This Court found that the appellate record was insufficient to consider the defendant's allegations of pre-trial ineffective assistance of counsel, noting that decisions relating to failure to investigate certain theories or other trial preparation issues would require an evidentiary hearing and could not possibly be decided in the appeal.
Likewise, in this case, we find that defendant's ineffective assistance of counsel claim would be more appropriately raised in an application for post-conviction relief in the trial court, where a full evidentiary hearing can be conducted, if necessary.[7]
*1197 Sufficiency of the Evidence (Pro Se Assignment of Error Number Two)
In his next pro se assigned error, defendant challenges the sufficiency of the evidence used to convict him of possession of a firearm by a convicted felon.
In reviewing the sufficiency of evidence, an appellate court must determine that the evidence, whether direct or circumstantial, or a mixture of both, viewed in the light most favorable to the prosecution, was sufficient to convince a rational trier of fact that all of the elements of the crime have been proven beyond a reasonable doubt. Jackson v. Virginia , 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979) ; State v. Neal , 00-674 (La. 6/29/01), 796 So.2d 649, 657, cert. denied , 535 U.S. 940, 122 S.Ct. 1323, 152 L.Ed.2d 231 (2002).
When circumstantial evidence is used to prove the commission of the offense, La. R.S. 15:438 provides: "assuming every fact to be proved that the evidence tends to prove, in order to convict, it must exclude every reasonable hypothesis of innocence." The reviewing court is not required to determine whether another possible hypothesis of innocence suggested by the defendant offers an exculpatory explanation of events. Rather, the reviewing court must determine whether the possible alternative hypothesis is sufficiently reasonable that a rational juror could not have found proof of guilt beyond a reasonable doubt. State v. Mitchell , 99-3342 (La. 10/17/00), 772 So.2d 78, 83.
Defendant was convicted of possession of a firearm by a convicted felon in violation of La. R.S. 14:95.1. To support a conviction under La. R.S. 14:95.1, the State must prove that the defendant possessed the firearm, that the defendant had a prior conviction for an enumerated felony, that the defendant possessed the firearm within ten years of the prior conviction, and that the defendant had the general intent to commit the crime. See State v. Hernandez , 11-146 (La. App. 5 Cir. 11/29/11), 82 So.3d 327, 331, writ denied , 12-33 (La. 8/22/12), 97 So.3d 357.
On appeal, defendant does not challenge the evidence regarding his prior conviction or the ten-year cleansing period, but rather disputes the sufficiency of the evidence of possession and intent. In particular, defendant argues that the State failed to prove that he had possession of a firearm because the firearm was not taken from his person, and there was no evidence that he discarded the firearm. Further, defendant contends that the State failed to prove that he had knowledge that the firearm was in his vehicle or that he had the requisite mental intent to possess the firearm.
Actual possession of a firearm is not necessary to prove the possession element of La. R.S. 14:95.1. Constructive possession is sufficient to satisfy the element of possession. State v. Day , 410 So.2d 741, 743 (La. 1982). A person is in constructive possession of a firearm if the firearm is subject to his dominion and control. A person's dominion over a weapon constitutes constructive possession, even if it is only temporary in nature and even if control is shared. However, a defendant's mere presence in an area where a firearm was found does not necessarily establish possession. State v. Johnson , 03-1228 (La. 4/14/04), 870 So.2d 995, 998-99. The State must also prove that the offender was aware that a firearm was in his presence and that he intended to possess the weapon. Such guilty knowledge may be inferred from the circumstances and proved by direct or circumstantial evidence. State v. Mickel , 09-953 (La. App. 5 Cir. 5/11/10), 41 So.3d 532, 535, writ denied , 10-1357 (La. 1/7/11), 52 So.3d 885.
*1198 In the instant case, the evidence presented at trial showed that the firearm was found hidden underneath the driver's seat in the truck where defendant was previously sitting. Also, Officer Paz observed defendant "kind of reaching down" when he shined his flashlight into defendant's vehicle, and the firearm in the instant case was later retrieved from the same area where the officer observed defendant reaching down. See State v. Major , 08-861 (La. App. 4 Cir. 12/10/08), 1 So.3d 715, writ denied , 09-49 (La. 9/25/09), 18 So.3d 81, and State v. Hernandez , supra (where the appellate courts affirmed the defendants' convictions for possession of a firearm by a convicted felon after concluding that the evidence was sufficient to prove the elements of possession and intent). Further, although defendant contends that it is plausible and reasonable that the firearm "may have been placed in Mr. Perry's truck by a relative who recently used it prior to the incident on June 1, 2016 without his knowledge," there was no such evidence admitted at trial.
Based on the foregoing, we find that a rational trier of fact could have found that the evidence presented at trial was sufficient under the Jackson standard to prove that defendant constructively possessed the firearm and that he had the intent to do so. Accordingly, the arguments raised by defendant in this assigned error lack merit.
Right to Resist Unlawful Arrest (Pro Se Assignment of Error Number Three)
In his final pro se assigned error, defendant argues that the trial court failed to recognize his right to resist an unlawful arrest. He contends that Officer Paz had physically assaulted him in the past and that upon recognizing the officer, he complied with the officer's commands without incident. Defendant asserts that Officer Paz initiated a physical confrontation with him which led to the defense of an illegal arrest.
An individual in Louisiana has a time-honored right to resist an illegal arrest. However, that right is only available where the arrest is illegal and is tempered by the requirement that in preventing such illegal restraint of his liberty, he may use only such force as may be necessary. Thus, the issue is whether the police had lawful grounds, or probable cause, to arrest the defendant. State v. Fairman , 15-67 (La. App. 5 Cir. 9/23/15), 173 So.3d 1278, 1285.
Probable cause to arrest exists when the facts and circumstances within an officer's knowledge, and of which he has reasonable and trustworthy information, are sufficient to justify a man of average caution in the belief that the accused has committed an offense. Probable cause to arrest is not absolute cause, and to determine its existence, courts must examine facts and circumstances within the arresting officer's knowledge in light of the experience of reasonable people, not legal technicians. State v. Scales , 93-2003 (La. 5/22/95), 655 So.2d 1326, 1331, cert. denied , 516 U.S. 1050, 116 S.Ct. 716, 133 L.Ed.2d 670 (1996). Furthermore, probable cause, and not absolute certainty, is the test to be applied in judging the validity of an arrest, and all possible lawful explanations of a situation need not be negated before making an arrest. State v. Fairman , 173 So.3d at 1285.
In the instant case, we find that Officer Paz had probable cause to arrest defendant when he refused to remain at the scene after hitting the vehicle behind him. Thus, defendant did not have the right to resist his lawful arrest. This assigned error is likewise without merit.
*1199 ERRORS PATENT REVIEW
We have also reviewed the record for errors patent, according to La. C.Cr.P. art. 920 ; State v. Oliveaux , 312 So.2d 337 (La. 1975) ; and State v. Weiland , 556 So.2d 175 (La. App. 5th Cir. 1990).
Our review of the record reveals a discrepancy between the transcript and the commitments regarding the sentence imposed on count three. While both the commitment/minute entry and the uniform commitment order reflect that the trial judge sentenced defendant on count three to three years at hard labor without benefit of parole, probation, or suspension of sentence, the transcript does not indicate the restriction of benefits. Generally, the transcript prevails. State v. Lynch , 441 So.2d 732, 734 (La. 1983). However, La. R.S. 14:34.2(B)(3) provides that at least thirty days of the sentence imposed shall be served without benefit of parole, probation, or suspension of sentence.
This Court has found that when the statute gives the trial court discretion as to the amount of time imposed without benefits, the reviewing court should vacate the illegally lenient sentence and remand for resentencing. State v. Ables , 16-538 (La. App. 5 Cir. 2/8/17), 213 So.3d 477, 486, writ denied , 17-488 (La. 11/28/17), 230 So.3d 221. Because La. R.S. 14:34.2(B)(3) provides that "at least thirty days" of the sentence shall be served without benefit of parole, probation, or suspension of sentence, we vacate defendant's sentence on count three and remand for resentencing.
DECREE
Accordingly, for the reasons set forth herein, we affirm defendant's convictions and the sentence imposed on count one. However, we vacate defendant's sentence for his conviction of battery of a police officer and remand the matter for resentencing in accordance with this opinion.
CONVICTIONS AFFIRMED; SENTENCE ON COUNT ONE AFFIRMED; SENTENCE ON COUNT THREE VACATED; REMANDED WITH INSTRUCTIONS

Defendant's first name is spelled inconsistently throughout the record as either "Tyronne" or "Tyrone." As evidenced by his pro se pleadings, it appears that the correct spelling is "Tyrone."

During cross-examination at the suppression hearing, Officer Paz testified that he initially noticed the Titan truck as he approached the area of the disturbance call because the tail lights or brake lights were on, and he "didn't know if contraband was involved."

Having found that the search in the instant case was permissible pursuant to the automobile exception to the warrant requirement, we find it unnecessary to address defendant's argument relating to the validity of the search as incident to an arrest.

Mr. Vedros was appointed as "shadow counsel" to advise defendant on legal issues that might arise during the course of trial.

A prospective juror's association with law enforcement agencies or personnel will not alone disqualify him from service. The fitness of a prospective juror, including an actively employed law enforcement officer, should rightly be determined on a case-by-case basis after consideration of the grounds to support a challenge for cause set forth in La. C.Cr.P. art. 797. State v. Mazique , 40 So.3d at 237-38.

It is noted that defendant filed an untimely motion to reconsider sentence that was denied by the trial court.

Defendant will still have to satisfy the requirements of La. C.Cr.P. arts. 924 et seq. to receive such a hearing. See State v. Simmons , 136 So.3d at 370 n.11.